*D. Mace*, for the plaintiff.

*J. Pettit* and *S. A. Huff*, for the defendant.

---

Doe, on the Demise of CHANDLER and Others, *v.* DOUGLASS.

The act to authorize the sale of a certain tract of land belonging to the estate of
  *Asaph Chandler*, deceased, approved *January* 1st, 1819, is constitutional.

Tuesday,
May 26.

ERROR to the *Vanderburgh* Circuit Court.

PERKINS, J.—Ejectment for the undivided third part of three lots in the town of *Evansville*, brought by *Doe*, on the demise of *William H.*, *John J.*, and *Mary R. Chandler*, against *John Douglass*.   Verdict for the defendant; motion for a new trial overruled; and judgment on the verdict.

Both parties claim title under *Asaph Chandler;* the lessors of the plaintiff as heirs at law, and the defendant through a purchase from *Asaph's* administrator.

The authority by virtue of which the administrator made the sale, was an act of the legislature, approved *January* 1st, 1819, the preamble to which recites, that it was represented to that body that *Asaph Chandler*, then deceased, and two other persons, a few months previous, became the equal owners of thirty acres of land, being part of the fractional section upon which stood the town of *Evansville;* that the same was purchased for the sole purpose of being laid off into town lots and sold; that its sale would afford an opportunity for its improvement, and thus greatly enhance the value of other real property adjoining thereto, and belonging to said *Asaph's* estate; but that [on account of the minority of the heirs of said *Asaph*] there was no person authorized to sell said property; for remedy whereof, it enacts that *John G. Chandler*, administrator of the estate of said *Asaph*, be, and he is hereby authorized to sell and convey the said undivided third part of said thirty acres, in such manner, at such times, and upon such terms, as he shall deem most advantageous to the estate. The act declares the proceeds of any sale shall be assets in his hands to be disposed of according to law. It requires the administrator to give additional security to the approval of the Court granting letters of administration.

The security of the administrator was approved by the Court, and he sold the undivided third part of the thirty acres for 300 dollars to *Elisha Harrison*, and executed a deed therefor. The lots in question are a part of the thirty acres.

The plaintiff objected, upon the trial, to this act of the legislature, and the deed to *Harrison* under it, going in evidence to the jury, on the ground that the act was unconstitutional, and the deed by virtue of its authority void, but the objection was not sustained. On the motion for a new trial, the objection to their admissibility was renewed and again overruled.

The alleged unconstitutionality of this special act, forms the basis of all the errors assigned upon the record, and brings up the main question in the cause.

If then this act is unconstitutional, it is because it infringes some restriction upon the legislative power of this state, for that power is supreme except wherein restrictions have been

imposed. Those restrictions are contained in the constitution of the *United States*, of our own state, and in the ordinance of congress of 1787 for the government of the North-Western territory. 1 M'Lean's R. 337. So far as they pertain to the question under consideration, they are all embodied in our own constitution; and they restrain the legislature from passing, a law impairing the obligation of a contract, from the performance of a judicial act, and from any flagrant violation of the right of private property. This last restriction, we think clearly contained in the 1st and 24th sections of the first article of our constitution. Does the act involved in this case, come within any of these restrictions? That it does not, is clearly settled by judicial authorities, if any question can be settled by such authorities, and those entitled to the highest consideration. Legislative acts, some of them precisely analogous to, and others equally obnoxious to the same constitutional objections with, that under consideration, have been sanctioned, under constitutions containing the same provisions bearing upon the question as our own, by the Supreme Court of *Kentucky*, of *Ohio*, of *Massachusetts*, and the principles of them by the Supreme Court of the *United States*. 4 Monroe, 91.—6 *id*. 594.—9 Ohio, 45.—16 Mass. 326.—2 Pet. 627. And see *Cochran* v. *Van Surlay*, 20 Wend. 365. In the face of these decisions, directly in point and opposed by no counter authority applicable to the case before us, we should be reluctant to declare the act objected to so clearly unconstitutional as to authorize us to set it aside. The reasoning, with which we are satisfied, by which such acts are supported and reconciled with the constitution, may be found in the cases cited and need not be embodied in this opinion.

We have said that no conflicting authority, applicable to the present case, has come to our notice. That of *Jones's Heirs* v. *Perry et al.* 10 Yerger's Tenn. R., is relied on by the plaintiff as being such. It is true that in the opinion of the Court, some of the grounds of decision in the cases upon which we have relied are attempted to be impugned; but the facts of that case bear but a remote analogy to those of the present, and differ widely from most of those which it assails. There as here, indeed, was a special act of the

legislature authorizing an individual to sell land of infant heirs, but the similarity extends no farther. In that case the legislature, acting upon "the avowed ground" that the estate of the deceased was liable for certain debts, authorized the land to be sold and the proceeds appropriated to the payment of those debts, before they had been established in a Court of law, and before the land had been adjudged liable therefor, and the Court held that in so doing the legislature usurped judicial functions, and absolutely deprived the heirs of their property without the judgment of their peers, and against the law of the land, which, by the constitution of the state, it could not do. This seems to have been the ground upon which the Court in *Tennessee* decided. Mr. Justice *Green,* in delivering the opinion of the Court, says, "It is difficult to perceive how an act which determines that the property of a party is liable for a given debt, and that it be sold for the payment of that debt, is not a judicial act, and yet in substance, that is the case before us." In substance, that is not the case before this Court. Here, the act was not passed upon the ground that the estate was indebted, nor did it authorize the proceeds of any sale to be applied to the payment of debts, and did not deprive the heirs of their property; but simply authorized it to be changed from real into personal. It declares, it is true, that the proceeds of the sale shall be assets in the hands of the administrator, to be disposed of, not in the payment of debts, but according to law, which would distribute them among the heirs, except in the contingency upon which they would have been liable as real estate for the payment of debts.

The dissimilarity of the case in *Tennessee* to that above cited from *Massachusetts,* is pointed out in the opinion of the Court already quoted. In commenting upon that case, it says: "It results from what has been said that the case of *Rice* v. *Parkman* [16 Mass. 326] is not an authority in this case. If there were no other objection to considering it as such, the dissimilarity of the two cases would prevent its application. There, the infants were not deprived of their property by the legislative act, but it was only transmuted from real to personal property manifestly to their advantage. Here, the property descended to these heirs has been sold to pay

debts for which they had not been rendered liable, and for the payment of which they had a right to require the whole personal estate, before their lands could be charged. In such a case as this, the Court whose opinion has been so often referred to, would not have sustained the act."

It will thus be seen that the *Massachusetts* case is precisely the one before us, while that from *Tennessee* "is not an authority" in this case, as "the dissimilarity of the two prevents its application." Differences might in like manner be pointed out between that case and others relied upon by this Court, but it is unnecessary. It is the duty of the legislature of the state to provide for the protection of real estate of infant heirs. That duty had not been performed by the passage of any general law, at the time the sale in controversy in the present case was authorized; and the legislature in those days was in the practice of discharging it in particular cases, as they were brought before it. A general law has since been passed authorizing the "transmutation of the real estate of minor heirs into personal," when it will be "manifestly to their advantage," and the necessity for the passage of these generally objectionable special acts has ceased. See law regulating Probate Courts.

Of so many, then, of the heirs of *Chandler* as were minors at the sale under the authority of the legislature, we regard the title as divested by that act; but one of them is shown to have been at that time of age, and that one was *John G. Chandler*, who made the sale. He has since quit claimed to the lessors of the plaintiff; but his title was clearly barred by his own acts, and he could therefore convey no right to the lessors in this case.

BLACKFORD, J., being interested in the cause, was absent.

*Per Curiam.*—The judgment is affirmed with costs.

*O. H. Smith*, for the plaintiff.

*J. Law* and *J. Pitcher*, for the defendant.