## FRY v. THE STATE.

CRIMINAL LAW.—*Constitutional Law.*—*Brokerage in Railroad, etc., Tickets.*—*" Ticket Scalper."*—*Police Regulation.*—The act of March 9th, 1875, 1 R. S. 1876, p. 259, " regulating the issuing and taking up of tickets and coupons of tickets by common carriers," etc., is in the nature of a police regulation, is valid, and is not in conflict with the constitution of either the United States or this State.

SAME.—*Impairing Obligation of Contract.*—*Monopoly.*—Such statute does not impair the obligations of contracts, nor does it grant to any one privileges or immunities denied to others.

SAME. *Inter-State Commerce.*—Such statute does not violate section 8 of article 1 of the constitution of the United States, which confers upon Congress the power to regulate commerce " among the several States."

From the Marion Criminal Circuit Court.

*R. B. Duncan, C. W. Smith* and *J. S. Duncan*, for appellant.

*T. W. Woollen,* Attorney General, *J. B. Elam,* Prosecuting Attorney, *C. Baker, T. A. Hendricks, O. B. Hord* and *A. W. Hendricks,* for the State.

HOWK, C. J.—The indictment against the appellant, in this case, charged, in substance, that the appellant, on the 9th day of January, 1879, at and in the county of Marion, " did then and there unlawfully barter and sell, for a valuable consideration, to wit, the sum of ten dollars, to some person whose name is to the grand jurors unknown, a railroad ticket, the description and style of which said ticket is to the grand jurors unknown, for the reason that said ticket is lost and can not be found, entitling and evidencing the right of the holder thereof, to wit, the person whose name is to the grand jurors unknown as aforesaid, to travel and be transported over some railroad, the name and style of which said railroad is to the grand jurors unknown, running from the city of Indianapolis, in the county of Marion and State of Indiana, to the city of St. Louis, in the State of Missouri. The grand jurors aforesaid, upon their oath aforesaid, do further present, that, upon the said 9th day of January, A. D. 1879, at the time and place said Fry sold said ticket as aforesaid, to said person whose name is to the grand jurors unknown as aforesaid, to wit, at the county of Marion and State aforesaid, said Fry was not then and there the agent of the railroad whose name and style is to the grand jurors unknown as aforesaid, and said Fry was not then and there authorized to sell tickets or other certificates, evidencing the right of the holder thereof to travel and be transported upon said railroad, and he did not then and there have a certificate provided him by said railroad, setting forth his authority as agent of said railroad, signed by the managing officer of such railroad, and duly attested by its corporate seal; that said George W. Fry had not purchased the said ticket evidencing the right of the holder thereof to travel and be transported by said railroad from the said city of Indianapolis, in the county of Marion and State of Indiana, to the said city of St. Louis, in said State of Mis-

souri, from an agent of said railroad authorized to sell tickets or other certificates evidencing the right of the holder thereof to travel and be transported by said railroad, and provided a certificate setting forth his authority as such agent to make such sales, signed by the managing officer of said railroad, and duly attested by the corporate seal of said railroad, with a *bona fide* intention of travelling on the same. Wherefore the grand jurors aforesaid, upon their oaths aforesaid, do further present and charge, that said sale of said ticket, by said George W. Fry, to said person whose name is to the grand jurors aforesaid unknown as aforesaid, and in manner and form aforesaid, was and is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The appellant moved the court to quash said indictment, which motion was overruled, and to this ruling he excepted.

On arraignment, the appellant's plea to said indictment was that he was not guilty as therein charged.

The issues joined were tried by the court without a jury, upon an agreed statement of facts, and a finding was made by the court, that the appellant was guilty as charged in the indictment.

The appellant's motion for a new trial was overruled by the court, and to this decision he excepted, and judgment was rendered against him by the court on its finding, from which judgment this appeal is now here prosecuted.

Errors have been assigned by the appellant, in this court, which call in question the following decisions of the court below:

1. The overruling of his motion to quash the indictment; and,

2. The overruling of his motion for a new trial.

In their argument of this cause, in this court, the appel-

lant's learned counsel have expressly waived all "technical objections" to the indictment. They do not claim "that the grand jury had no legal authority to enquire into the offence charged;" nor do they claim, "that the indictment contains any matter which if true would constitute a legal justification of the offence charged, or other legal bar to the prosecution." But the appellant's motion was evidently founded upon the second statutory cause for quashing an indictment, namely, "That the facts stated do not constitute a public offence." 2 R. S. 1876, p. 399, sec. 101.

The facts stated in the indictment in this case show, very clearly, that it was intended to charge the appellant, therein and thereby, with a violation of the provisions of the 5th section of an act entitled "An act regulating the issuing and taking up of tickets and coupons of tickets by common carriers, and defining the rights of holders thereof, and other matters in relation thereto," approved March 9th, 1875. 1 R. S. 1876, p. 259.

It is earnestly insisted, by the appellant's counsel, that this entire statute is unconstitutional and void, upon the following grounds:

1. Because it is in violation of section 8 of article 1 of the constitution of the United States, which provides: "The Congress shall have power:— * * *

"To regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

2. Because "it is also an infraction of at least two provisions of the constitution of Indiana.

"1. It impairs the obligations of contracts; * * *

"2. It undertakes to grant to carriers of passengers privileges and immunities which it does not extend to other citizens upon the same terms, or upon any terms whatever."

We will consider the appellant's objections to the con-

stitutionality and validity of the statute, in the inverse of the order in which his attorneys have presented. them. We have already given the title of the act, and for the purpose of convenient reference we will set out the entire statute, in this connection, as follows:

" SECTION 1. *Be it enacted by the General Assembly of the State of Indiana*, That it shall not be lawful, from and after the taking effect of this act, for any officer or agent of any railroad company, steamboat, or other public conveyance of passengers for hire or reward, or for the operator or operators, manager or managers (or his or their agent or agents), of any such railroad, steamboat or other public conveyance, to issue or sell any pass, ticket, or coupon of a ticket, or certificate evidencing the holders' right to travel over or be transported in or upon such railroad, steamboat or other public conveyance, subject to any condition contained in or endorsed upon. or appended to such pass, ticket, coupon or certificate, whereby the liability of such carrier shall be abridged or limited, or whereby the rights of the holder of such pass, ticket, coupon or certificate shall be decreased or abridged, unless such condition shall be printed in nonpareil type, or in type or characters as large or larger than nonpareil type. Any such officer, agent, operator or manager, or the agent of such operator or manager, who shall violate the provisions of this section of the act, shall, upon conviction thereof, be fined not less than ten dollars, nor more than one hundred dollars, for each pass, ticket or coupon which he shall issue or sell, contrary to the provisions of this section: *Provided, however*, That nothing herein shall be held or construed to change, or in any manner affect, the law as it now exists, regulating the liability of common carriers, or to enlarge their right to limit, or restrict their liabilities on account of having such attempted limitation printed, as required by this act.

" SEC. 2. That it shall be the duty of the owner or owners, or operator or operators, of every railroad and steamboat or other public conveyance for the transportation of passengers for hire, or reward, to provide each agent, who may be authorized to sell tickets or other certificates evidencing the right of the holder thereof to travel or be transported upon such railroad, steamboat or other public conveyance, with a certificate, setting forth the authority of such agent to make such sales, which certificates shall be signed by the managing officer, and duly attested by the corporate seal of the owner or operator of such railroad, steamboat or other public conveyance.

" SEC. 3. It shall be the duty of the owner or owners, operator or operators, of every railroad, steamboat, or other public conveyance of passengers for hire or reward, to provide at each agency, for the sale of tickets, for the redemption of the whole of any ticket or any part or parts, or coupon of any ticket, which they may have sold, and which the purchaser, for any reason, shall not have used, at the following rates, namely : where the whole ticket is presented for redemption, at the full price paid for the same, and when a part or coupon of the ticket only is presented for redemption, then the redemption shall be at a rate which shall be equal to the difference between the price paid for the whole ticket and the cost of a ticket between the points for which the part of said ticket was actually used; and the sale, by any person, of the unused portion of any ticket, otherwise than by the presentation of the same for redemption as aforesaid, shall be deemed to be a misdemeanor, and shall be punished by a fine of not less than five dollars, nor more than fifty dollars : *Provided, however,* That this act shall not prohibit any person who shall have purchased a ticket from an agent, authorized, as by this act provided, with the *bona fide* intention of travelling on the same, from selling such ticket, or any part or coupon

thereof, to any other person, to be used in good faith by such person in travelling over such railroad, or in or upon such steamboat, or other public conveyance.

"Sec. 4. If any owner, operator or manager of any railroad, steamboat or other public conveyance of passengers, or his agent, shall violate any of the provisions of the third section of this act, he shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be fined not less than ten, nor more than one hundred dollars.

"Sec. 5. It shall not be lawful for any person, not possessed of the authority mentioned in the second section of this act, and not evidenced as therein provided for, to sell, barter or transfer, within this State, for any consideration whatever, the whole or any part of any ticket or tickets, passes or other evidence of the holder's title to travel on, or be transported in, or over any railroad, steamboat or other public conveyance, whether the same be situated, owned or operated within or without this State, except as provided for in section three.

"Sec. 6. It shall be the duty of every agent who shall be authorized to sell tickets or parts of tickets, or coupons, as is provided for in the second section of this act, or other evidences of the holder's title, to travel on any railroad, or in any steamboat or public conveyance, to keep his certificate of authority posted in a conspicuous place in his office, and also to exhibit the same to any person desirous of purchasing a ticket, or to any officer of the law who may request to see or inspect such certificate of authorization.

"Sec. 7. Any person who shall violate any provisions of either the fifth or sixth sections of this act, shall, upon conviction thereof, be fined not less than ten, nor more than one hundred dollars.

"Sec. 8. The provisions of this act shall not apply to special, half-fare or excursion tickets."

It is the settled doctrine of the decisions of this court, that " The legislative authority of this State is the right to exercise supreme and sovereign power, subject to no restrictions except those imposed by our own constitution, by the federal constitution, and by the laws and treaties made under it. This is the power under which the Legislature passes all laws." *Beauchamp* v. *The State*, 6 Blackf. 299. *Doe* v. *Douglass*, 8 Blackf. 10 ; *The Lafayette, etc., R. R. Co.* v. *Geiger*, 34 Ind. 185. It must appear very clearly, that the legislation is in conflict with some express provision of the constitution, or the statute will be upheld.

It is claimed by the appellant that the statute, above quoted, is in conflict with that provision of the Bill of Rights, which declares that no law shall ever be passed " impairing the obligation of contracts." We fail to see this matter in the light in which the appellant's counsel have presented it. But, if it could be said that the statute did impair the obligation of contracts existing at the time of its passage, the effect would be, as it seems to us, that, as to such existing contracts, the statute would be inoperative and of no effect ; while it might be and would be, if no other objection existed, constitutional and valid as to all future contracts. The transaction, on which the indictment in this case was predicated, occurred nearly four years, as alleged, after the passage of the act in question, and it can not be said, we think, that the statute impaired the obligation of any contract in connection with that transaction. This objection to the constitutionality of the statute was not well taken, and can not be sustained, in any view of the question.

The second objection urged by the appellant, to the validity of the statute, under our state constitution, is, that it is in conflict with that section of the Bill of Rights, which declares, that " The General Assembly shall not grant to

any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

In discussing this objection, the appellant's counsel say of the statute : " It grants to any common carrier the exclusive right to purchase the unused portion of its tickets, and does not, under any circumstances, permit any other person to engage in the purchase thereof, and extends to said carriers immunity from all competition in the purchase and sale of such tickets. It simply is enabling a monopoly to be more exclusive."

We do not think that this is a fair statement of the purport and effect of the statute. It does not grant a right to, but imposes a duty upon, the common carrier of passengers, to purchase the unused portion of its tickets. It does not prevent, but expressly allows, the sale by the *bona fide* holder of such unused portions of tickets to any other person, to be used by such person in good faith in travelling therewith. It prohibits a general brokerage business in the buying and selling of such unused portions of tickets, except under certain well defined restrictions The provisions of the statute in this regard are manifestly police regulations; and whatever may be said, either for or against the justice or the wisdom of these regulations, it is certain, we think, that, in their enactment, the Legislature did not exceed their legitimate power under our state constitution. It is neither the province nor the duty of the courts to call in question either the policy or the wisdom of any act of legislation. The learned attorneys of the State have stated clearly and explicitly, in their argument of this cause, some of the motives which may possibly have induced the General Assembly to enact the statute now under consideration. Without endorsing in anywise this statement, it may not be improper for us to set it out, in this connection, as a statement of the views of the

representatives of the State in this prosecution, as to the probable reasons for the enactment of this statute.

Counsel say: " If the Legislature believed that spurious tickets were being put upon the market, by means of brokers, of such kind as to make detection difficult, and in such numbers as to amount to a serious injury to the people or the railroad companies, or if they believed that their offices furnished a market for stolen tickets, and aided employees of the railroads, or other persons, in carrying on a nefarious business, and a business dangerous both to the railroads and their patrons, and if they further believed, that the brokers were of little or no advantage to anybody, then they might well enact such a statute as this, as the best means of correcting an existing evil. And if it seemed wiser to the Legislature to strike directly at the brokers, and make their business unlawful, than to attempt to punish those who stole genuine or issued spurious tickets, they had the same right to take that course, that they have to make a man a criminal, who rents a house for gaming purposes, and thus assists gamesters, who are also criminals, in preying upon society."

In our opinion, the statute under consideration is not open to the second objection urged by the appellant's counsel against its validity, under the provisions of our state constitution.

We pass now to the consideration of the main ground of objection, presented by the appellant's attorneys, to the constitutionality and validity of the statute above quoted, namely, that it is in violation of section 8 of the first article of the constitution of the United States, which provides :

" The Congress shall have power:— * * * *

" To regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

In discussing this second objection to the statute under

consideration, the appellant's counsel lay down the following propositions, with the purpose of establishing the same, in and by their argument:

" I.   That the word commerce, as used in this section of the constitution, includes passenger travel, and hence any regulation of passenger travel is a regulation of commerce;

" II.   That the power vested in Congress to regulate commerce, as applied to inter-state passenger travel, is exclusive, and that the States have no power whatever to legislate upon this subject, even in the absence of legislation upon the part of Congress;

" III.   That, conceding that the right to regulate commerce exists in the States until Congress has exercised its powers in that behalf, Congress has so far exercised that power as to preclude any action on the part of the States.

" IV.   That the statute does attempt to regulate passenger travel among the States, and hence is void; and,

" V.   That such statute is not a legitimate exercise of the police power which confessedly resides in the several States."

We need not, in this opinion, consider or comment upon any of these propositions of the appellant's counsel, except the fourth and fifth.   We do not think that the first three of the five propositions, laid down by counsel, are in any manner involved in the case now before us.   We recognize the constitution of the United States, and the acts of Congress pursuant thereto, as the supreme law of the land.

It may be conceded that the word commerce, as used in section 8, above quoted, of the first article of the federal constitution, includes within its scope and meaning inter-state passenger travel; and that the power vested in Congress to regulate commerce, as applied to such travel, is so far exclusive in its character, as that the States may not, by

any act of legislation, impose burdens upon either the carrier or the passenger, which would obstruct or hinder the free course of travel. Such we understand to be the purport and effect of the decisions of the Supreme Court of the United States, in construing the section above quoted. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Passenger Cases,* 7 How. 283; *Henderson* v. *The Mayor, etc.,* 92 U. S. 259; *Chy Lung* v. *Freeman,* 92 U. S. 275; *Railroad Co.* v. *Husen,* 95 U. S. 465. In these cases the doctrine is firmly maintained, that Congress has the exclusive power to regulate commerce, including inter-state passenger travel; and, in the case last cited, the court defines the term commerce, and what is meant by a regulation of commerce, as follows: "Transportation is essential to commerce, or rather it is commerce itself; and every obstacle to it, or burden laid upon it, by legislative authority, is regulation."

From this definition of the term regulation, as applied to commerce, it would seem that a state statute, which placed no obstacle in the way of, and imposed no burden upon, inter-state passenger travel, could not be said to "invade the domain of the national government," and could not, for that reason, be held to be unconstitutional and void. It can not be said, we think, that the statute of this State, above quoted, in any manner impedes, obstructs or casts any burden upon the free course of commerce, in so far as inter-state passenger travel is concerned. The statute imposes certain prescribed duties upon common carriers of passengers and their agents, but the discharge of these duties does not and can not, as it seems to us, obstruct or hinder, or cast any burden upon, the commerce of the country or inter-state passenger travel. The act absolutely prohibits and makes unlawful the sale, barter or transfer, within this State, by any person not authorized thereunto as provided in said act, for any consideration whatever, of the whole or any part of any ticket or

tickets, passes, or other evidences of the holder's right to travel, etc. That far forth, the provisions of the statute must be regarded, as we have already said, as police regulations, the evident object and purpose of which were to prevent and prohibit a general brokerage business in the purchase and sale of such tickets, etc., and the unused portions thereof. We fail to see that these regulations are obstacles to, or burdens upon, inter-state commerce, in any sense of that term.

In the case of *Railroad Co.* v. *Husen, supra,* the Supreme Court of the United States say :

" We admit that the deposit in Congress of the power to regulate foreign commerce and commerce among the States was not a surrender of that which may properly be denominated police power. What that power is, it is difficult to define with sharp precision. It is generally said to extend to making regulations promotive of domestic order, morals, health, and safety. * * * It may also be admitted that the police powers of a State justifies the adoption of precautionary measures against social evils. Under it a State may legislate to prevent the spread of crime, or pauperism, or disturbance of the peace."

If, in the exercise of its police power, a State enacts certain regulations, which are neither obstacles to, nor burdens upon, inter-state commerce, it can not be said, we think, that such legislation " invades the domain of legislation which belongs exclusively to the Congress of the United States," merely because it relates to subjects which, to some extent, are connected with inter-state commerce. For, as we understand the decision of the Supreme Court of the United States in the case last cited, the state legislatures are prohibited, by said section 8 of the first article of the federal constitution, from enacting such regulations only, in relation to inter-state commerce, as would be either obstacles to, or burdens upon, such commerce.

If this view of the matter under consideration is correct, and we think it is, it follows very clearly that the statute of this State, above quoted, is not "in violation of section 8, article 1, of the constitution of the United States," and is not, therefore, unconstitutional and void.

In the same section of the same article of the constitution of the United States, it is provided, that "The Congress shall have power :— * * * * * * * * * " To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

The power thus given was early exercised, and since has been continuously exercised, by Congress in the enactment, from time to time, of suitable laws, for the purposes indicated. The power thus exercised is just as exclusive, in its origin and nature, as the power to regulate foreign or inter-state commerce. In *Ex parte Robinson*, 2 Bissell, 309, it was held by DAVIS, J., then an eminent and learned justice of the United States Supreme Court presiding in the United States Circuit Court in this district, as follows :

" The property in inventions exists by virtue of the laws of Congress, and no state has a right to interfere with its enjoyment, or to annex conditions to the grant. If the patentee complies with the law of Congress on the subject, he has a right to go into the open market anywhere within the United States and sell his property."

This court adopted and followed the doctrine of the case cited, in *Helm* v. *The First National Bank of Huntington*, 43 Ind. 167, and in *The Grover & Baker Sewing Machine Co.* v. *Butler*, 53 Ind. 454.

In the recent case of *Patterson* v. *Kentucky*, 97 U. S. 501, decided by the Supreme Court of the United States in February, 1879, the exclusive power of Congress to legislate on the subject of property in inventions was claimed by the

plaintiff in error, and that a statute of Kentucky, which imposed a fine on any one who should sell for certain purposes a certain patented article, possessed of certain qualities, was unconstitutional and void, because it was inconsistent with the federal constitution, and the laws of Congress pursuant thereto.   In an able and exhaustive opinion, Mr. Justice HARLAN lays down the doctrine, in that case, that, " obviously," the right of a patentee, under the constitution and laws of the United States, " is not granted or secured, without reference to the general powers which the several states of the Union unquestionably possess, in reference to their purely domestic affairs, whether of internal commerce or of police."   The learned judge quotes with approval, and to some extent grounds his opinion upon, the following excerpts from Mr. Cooley's excellent Treatise on Constitutional Limitations, to wit:

"In the American constitutional system, the power to establish the ordinary regulations of police has been left with the individual states, and can not be assumed by the national government. * * * If the power extends only to a just regulation of rights, with a view to the due protection and enjoyment of all, and does not deprive any one of that which is justly and properly his own, it is obvious that its possession by the state, and its exercise for the regulation of the property and actions of its citizens, can not well constitute an invasion of national jurisdiction, or afford a basis for an appeal to the protection of the national authorities."   Page 574.

In the case cited, it was held by the Supreme Court of the United States, that the Kentucky statute was a police regulation within the power of the State, and was not in violation of the constitution and laws of the United States. We have cited the case, in this connection, not because it is directly in point, but because it contains the latest expression we have seen of the views of the Supreme Court

of the United States upon subjects which are, at least, closely allied to the questions involved in this case. Of course, in so far as the doctrine of the case cited is in conflict with the decisions of this court, in the cases above cited, or any other cases in our Reports, the latter cases must be and are overruled.

In the case at bar, our conclusion is, that the statute of this State, above quoted, is not in conflict with the constitution or laws of the United States, but was a legitimate exercise by the State Legislature of the police powers of the State. Therefore, we hold that no error was committed by the court below, in overruling the appellant's motion to quash the indictment.

No point is presented for decision, by the appellant's counsel in argument, arising under the alleged error of the court in overruling the appellant's motion for a new trial. That error, even if it existed, must therefore be regarded as waived.

The judgment is affirmed, at the appellant's costs.