## Levy v. The State.

[No. 20,082.   Filed October 9, 1903.]

Constitutional Law.—*Objections Must be Specific.*—An objection that an act is not a constitutional exercise of legislative authority is too vague and indefinite to raise any question. The particular provisions of the Constitution supposed to be violated should be pointed out. *p. 256.*

Same.—*Transient Merchants.—License.—Equal Protection of Law.*—The act of 1901, §§7231a–7231i Burns 1901, prohibiting the transaction of business by any transient merchant without a license does not deny to the transient merchant the equal protection of the laws in violation of the fourteenth amendment of the United States Constitution. *p. 256.*

Same.—*Transient Merchants.—Acts Embracing More than One Subject.*—The act of 1901, §§7231a–7231i Burns 1901, prohibiting the transaction of business by a transient merchant without a license does not embrace more than one subject in violation of §19, article 4, of the state Constitution. *p. 256.*

Same.—*Privileges and Immunities.—Transient Merchants.*—The act of 1901, §§7231a–7231i Burns 1901, providing a license for transient merchants, does not contravene §23, article 1, of the state Constitution, by granting special privileges and immunities, since its

provisions apply to all transient merchants whether residents or nonresidents of the county and State.  *p. 256.*

CONSTITUTIONAL LAW.—*Taking Property Without Compensation.—Transient Merchants.*—The transient merchant act of 1901 §§7231a–7231i Burns 1901, does not authorize the taking of property without compensation in violation of §21, article 1, of the state Constitution.  *p. 256.*

SAME.—*Special Laws.—Transient Merchants.*—The act regulating the licensing of transient merchants, §§7231a–7231i Burns 1901, is not invalid on the ground that it is a special law for the support of the common schools because of the incidental provision in §7 thereof that the license fee shall be paid into the common school fund of the State, since such section, even if void, would not vitiate the act.  *p. 257.*

SAME.—*Uniform Taxation.—Transient Merchants.*—The exemption of sheriffs, constables, assignees, receivers, and other public officers from the operation of the act of 1901 licensing transient merchants does not render the act violative of §1, article 10, of the Constitution which requires that taxation shall be uniform and equal.  *p. 257.*

SAME.—*License.—Taxation.*—It is competent for the legislature to exact a license fee, and at the same time to subject to taxation the property employed in the occupation licensed.  *pp. 257, 258.*

SAME.—*Use of Property.—Transient Merchant.—License.*—The act of 1901, §§7231a–7231i Burns 1901, prohibiting the transaction of business of transient merchant without a license is a legitimate exercise of the police power of the State, and does not unlawfully deprive the citizen of the liberty to use and enjoy his property, and to pursue his happiness, as those rights are secured to him by §1, article 1, of the Constitution.  *pp. 258–262.*

From Whitley Circuit Court; *J. W. Adair,* Judge.

Abe Levy was convicted of transacting business as a transient merchant, without a license, and he appeals. *Affirmed.*

*T. R. Marshall, W. F. McNagny* and *P. H. Clugston,* for appellee.

*C. W. Miller,* Attorney-General, *C. C. Hadley, W. C. Geake, L. G. Rothschild, W. H. H. Miller, J. B. Elam, J. W. Fesler* and *S. D. Miller,* for State.

DOWLING, J.—An information filed against the appellant charged him with a violation of the act of March 11, 1901 (Acts 1901, p. 466, §§7231a–7231i Burns 1901) pro-

hibiting the transaction of business by any transient merchant without license. He was found guilty, and judgment was rendered upon the finding. The validity of the statute is brought in question, and duly presented by motions to quash the information and for a new trial.

The objections taken to the act, as stated by counsel for appellant, are: (1) That it is not a constitutional exercise of legislative authority; (2) that it violates the provisions of the fourteenth amendment of the Constitution of the United States, by denying to the transient merchant the equal protection of the laws; (3) that it violates §19, article 4, of the state Constitution, more than one subject being embraced in the act; (4) that it contravenes §23, article 1, of the state Constitution, by granting to one class of citizens privileges and immunities which upon the same terms do not equally belong to all citizens; (5) that it conflicts with §21, article 1, of the state Constitution by authorizing the taking of the property of the citizen without due compensation; (6) that it is a special law for the support of the common schools, and therefore void under §22, article 4, of the Constitution; (7) that it violates §1, article 10, of the Constitution, which requires that taxation shall be uniform and equal, and that no property shall be exempt therefrom, except such as is used for municipal, educational, literary, scientific, religious, or charitable purposes; (8) that it violates §1, article 1, of the Constitution which guarantees to every citizen of the State life, liberty, and the pursuit of happiness; and (9) that the act is void because it imposes double taxes.

It appeared upon the trial, among other facts, that the appellant was a resident of the city of Ft. Wayne, in this State, where he carried on a general clothing business. He rented a room in Churubusco, a town of 1,200 inhabitants, in said Whitley county. He stated that he intended to occupy it for a few days only. He put no furniture in the room, but placed therein a stock of clothing and notions.

He did not apply for nor receive a license to transact business in the said town or county as a transient merchant. He exhibited his goods for sale, and sold the merchandise mentioned in the information at the time and place and to the person and for the price named. The population of Whitley county was less than 20,000.

The provisions of the act of March 11, 1901, *supra,* to be considered upon this appeal, are: Section 1, which declares that it shall be unlawful for any transient merchant to engage in or transact business as such merchant without having first obtained a license as required by the statute; §2, prescribing the mode of application for the license, the fees to be paid therefor, and the mode of issuing the same; §4, which fixes the penalty for a violation of the act; §6, defining the term transient merchant; §7, directing that all license fees collected under the act be paid into the common school fund of the State; and §8, which exempts from the operation of the statute commercial travelers, sales by sample for future delivery, hawkers and peddlers, sheriffs, constables, and other public officers selling goods according to law, and assignees and receivers appointed in this State.

Many of the points of objection to the statute made by counsel are merely stated, but not discussed, and we are left to conjecture the reasons on which they are supposed to rest. The importance of the main question, however, has led us to make a careful examination of all the objections suggested, and of the authorities bearing upon each of them. The case made by the information and the proof is that the appellant, being a transient merchant, within the meaning of the act of March 11, 1901, *supra,* as such merchant sold an article of merchandise as charged in the information, not being licensed so to do, and in violation of the statute. If the statute is valid, the conviction was proper. The only question is the constitutionality of the act.

The general principles by which courts are governed in determining the validity of acts of the legislature are too familiar and well established to require a citation of the cases in which they have been announced or followed. The presumption is generally in favor of the validity of the statute, and an act will never be stricken down by the courts unless the grounds of its invalidity are clearly apparent. In doubtful cases the statute must be upheld. Where the power to enact a law exists, the legislative discretion concerning the time, the circumstances, and the situation calling for the exercise of such power is not subject to review or control by the courts. Where a power is granted or reserved to the legislature, the grant or reservation carries with it the right to use the necessary means to effect the object of such grant or reservation. The authority of the legislature to determine what things are injurious to the interest and welfare of the public, and what measures are necessary for the safety, comfort, and well-being of the citizens of the State, is extensive and far-reaching and, as has often been said, is incapable of strict definition or limitation. A legislative declaration that an evil exists, or that injury is likely to result to the public from particular trades or occupations unless restrained or regulated by law, is entitled to the highest respect by the courts, and should never be disregarded unless clearly in conflict with some provision of the Constitution. As was said in *Fry* v. *State,* 63 Ind. 552, 559: "It is the settled doctrine of the decisions of this court, that 'The legislative authority of this State is the right to exercise supreme and sovereign power, subject to no restrictions except those imposed by our own Constitution, by the federal Constitution, and by the laws and treaties made under it. This is the power under which the legislature passes all laws.' *Beauchamp* v. *State,* 6 Blackf. 299; *Doe* v. *Douglass,* 8 Blackf. 10; *Lafayette, etc., R. Co.* v. *Geiger,* 34 Ind. 185. It must appear very

clearly, that the legislation is in conflict with some express provision of the Constitution, or the statute will be upheld." On the other hand, the authority of the legislature is not supreme, but must be exercised in subordination to the rules of the federal and state Constitutions. The personal liberty of the citizen is the especial object of the care and protection of the Constitution, and it can be abridged or taken away only when the public welfare requires such interference with it.

The first objection, viz., that the act is not a constitutional exercise of legislative authority, is too vague and indefinite to raise any question. The particular provision of the Constitution supposed to be violated should be pointed out.

The second is without merit. The act does not deny to the transient merchant the equal protection of the laws. *Duncan* v. *Missouri,* 152 U. S. 377, 14 Sup. Ct. 570, 38 L. Ed. 485; *Minneapolis, etc., R. Co.* v. *Emmons,* 149 U. S. 364, 13 Sup. Ct. 870, 37 L. Ed. 769; *State* v. *Gerhardt,* 145 Ind. 439, 33 L. R. A. 313.

The third is equally groundless. The statute embraces a single subject—transient merchants, and the issuing of licenses to them—and that subject is clearly expressed in the title. *State* v. *Bailey,* 157 Ind. 324, 59 L. R. A. 435; *Gustavel* v. *State,* 153 Ind. 613.

The fourth objection, that the act grants special privileges and immunities, is without foundation. Its provisions apply to all transient merchants, whether residents or nonresidents of the county and State. The classification adopted is a natural and reasonable one, and as much so as that of auctioneers, hawkers, and peddlers. *Davis Coal Co.* v. *Polland,* 158 Ind. 607; *Parks* v. *State,* 159 Ind. 211.

The fifth, that the act authorizes the taking of the property of the transient merchant without compensation, has no application to statutes of this kind. *Fire Department* v. *Noble,* 3 E. D. Smith (N. Y.) 440; *City of Aurora* v.

*West,* 9 Ind. 74; *Decker* v. *Sargeant,* 125 Ind. 404; *Davis* v. *Fasig,* 128 Ind. 271; *People, ex rel.,* v. *Mayor, etc.,* 4 Comst. (N. Y.) 419, 55 Am. Dec. 266; *Parks* v. *State,* 159 Ind. 211.

The sixth point, that the act is a special law for the support of the common schools, has nothing to rest upon except the incidental provision by §7 that the license fees shall be paid into the common school fund of the State. The law is a general law regulating the licensing of transient merchants. It is not a revenue law. This section, even if void, would not vitiate the act. *Pennsylvania Co.* v. *State,* 142 Ind. 428, 435; *Judy* v. *Thompson,* 156 Ind. 533, 535; *City of East St. Louis* v. *Trustees, etc.,* 102 Ill. 489, 40 Am. Rep. 606; *Youngblood* v. *Sexton,* 32 Mich. 406; 20 Am. Rep. 654; *Fire Department* v. *Noble, supra.*

The seventh objection is made upon the theory that the statute is an exercise of the taxing power of the State; and, therefore, that the exemption of sheriffs, constables, assignees, receivers, and other public officers from its operation is unauthorized. Even if the purpose of the law was to raise revenue, the exception of public officers from its provisions would be legal. The sale of property by public officers or persons appointed for that purpose by courts, is not a business or occupation, and, if such officers and persons had not been expressly exempted from the operation of the statute, they could not have been held subject to its provisions. The object of the act is not to raise revenue, although it may have that result, but to regulate and restrain a species of trade, which, in the opinion of the legislature, might otherwise be injurious to the public interests.

The ninth objection, that the act imposes double taxes upon the transient merchant, is unimportant. It is competent for the legislature to exact a license fee, and at the same time to subject to taxation the property employed in the

occupation licensed. Familiar instances of this kind are found in the licensing of liquor saloons and billiard rooms, and the taxing of the stock of liquors and the furniture used in these occupations. *Goldsmith* v. *Mayor, etc.,* 120 Ala. 182; *Society for Savings* v. *Coite,* 6 Wall. (U. S.) 594, 18 L. Ed. 897; *Pullman Southern Car Co.* v. *Nolan,* 22 Fed. 276; *Scottish Union, etc., Ins. Co.* v. *Herriott,* 109 Iowa 606, 77 Am. St. 548; *Commonwealth* v. *Lancaster Sav. Bank,* 123 Mass. 493.

The eighth objection alone raises a serious question. Do the first, second, fourth, sixth, seventh, and eighth sections of the statute unlawfully deprive the citizen of the liberty to use and enjoy his property, and to pursue his happiness, as those rights are secured to him by §1, article 1, of the Constitution? Although the legislature may not arbitrarily declare acts, occupations, or things, which are in fact harmless in themselves, to be injurious to the public, and, in the exercise of the police power, subject them to governmental control, yet, when it does impose conditions and restrictions upon particular acts, occupations, or things, it must be presumed that a sufficient reason or necessity for such legislation existed. Those who assail a statute of this kind upon the ground that it is not a legitimate exercise of the police power must be able to show that the act, occupation, or thing prohibited or regulated is not injurious to the public, or likely to impair the public welfare.

In *Chesapeake, etc., Tel. Co.* v. *Manning,* 186 U. S. 238, 245, 22 Sup. Ct. 881, 46 L. Ed. 1144, in disposing of the objection to an act of congress fixing the rate of charges for telephone service, but which failed to provide for notice to the telephone companies affected, and which did not show a previous investigation by congress of the subject of such rates, the Supreme Court, by Brewer, J., say: "But it is well settled that the courts always presume that the legislature always acts advisedly and with full knowledge of the situation. Such knowledge can be acquired in other ways

than by the formal investigation of a committee, and courts can not inquire how the legislature obtained its knowledge. They must accept its action as that of a body having full power to act, and only acting when it has acquired sufficient information to justify its action."

The occupation of the itinerant or transient merchant, and the mode of conducting it, closely resemble the business of hawkers and peddlers, and the methods generally practiced by them in disposing of their goods and wares. The transient merchant has no fixed place of business, but migrates from town to town, remaining only long enough to dispose of his stock of goods. He is usually a stranger in the community where he offers his goods and makes his sales, and is often wholly irresponsible. Tempting advertisements and extravagant representations in regard to the character of his stock and the prices at which it will be sold are calculated to create excitement and to deceive the unwary, who are generally without redress for the impositions practiced upon them. The descriptions of the methods of the hawker taken from Jacob's Law Dictionary, and quoted at length in *Grafty* v. *City of Rushville,* 107 Ind. 502, 57 Am. Rep. 128, and in *City of South Bend* v. *Martin,* 142 Ind. 31, 29 L. R. A. 531, have sometimes been applied to the itinerant or transient merchant. "Hawkers. Those deceitful fellows who went from place to place, buying and selling brass, pewter and other goods and merchandise, which ought to be uttered in open market, were of old so-called; and the appellation seems to grow from their uncertain wandering, like persons that with hawks seize their game where they can find it. * * * Hawkers and peddlers, etc., going from town to town or house to house are now to pay a fine and duty to the king."

It was said in *Grafty* v. *City of Rushville, supra,* that one purpose of the statute empowering cities to pass ordinances restraining hawking and peddling was to protect and encourage local traders and merchants, and another to pre-

vent the indiscriminate invasion of the houses and places of business of citizens, and shield them from the practices of itinerant traders of unknown repute. It was also added by the court in this case that "The police power of the city may, therefore, be properly exerted to restrain all such as by their methods of doing business are liable to invade social order, by seeking purchasers for their wares in the homes of citizens, or in the streets and public places of a city, to the discouragement of the more legitimate methods of others on whom the municipality is dependent for its support." See, also, *City of South Bend* v. *Martin,* 142 Ind. 31, 29 L. R. A. 531; 21 Am. & Eng. Ency. Law (2d ed.), 791.

Nearly all the reasons assigned by the courts for the necessity of police regulation of hawking and peddling apply with equal force to the occupation of the itinerant or transient merchant. If the one occupation is a proper subject for legislative control, the other is equally so. The necessity for the protection of the public against imposition and dishonest practices of various kinds has resulted in legislation relating not only to hawking and peddling, but to the business of itinerant vendors and auctioneers, sales at markets and fairs, and other like trades, and statutes of this character have generally been sustained as a proper exercise of the police power. The act of March 11, 1901, *supra,* is closely akin to these enactments.

It is said in Cooley, Taxation (3d ed.), 412, that "A license fee imposed upon 'all transient persons keeping stores' in the town imposing it has been sustained as a police regulation, though called a tax in the legislation which permitted it." *Commissioners, etc.,* v. *Roby,* 8 Ired. (N. C.) 250, and *Commissioners, etc.,* v. *Patterson,* 8 Jones (N. C.) 182, are cited in the note on the text.

In *Commonwealth* v. *Crowell,* 156 Mass. 215, 30 N. E. 1015, the court say: "The object of the statute would seem to be to protect the public from the imposition liable to be

Levy v. State.

practiced upon it by itinerant vendors who are not hawkers or peddlers, because hiring, leasing, or occupying a building for their business, but who sell temporarily or transiently in one place, or in traveling from place to place, goods, wares, or merchandise, and who might naturally be supposed to be free, to some extent, at least, from the restraints and influences inducing fair and honest dealing which apply to persons established permanently in trade in a given locality. The statute applies to residents and nonresidents, and is not, as we construe it, designed or calculated to prevent fair and free competition, but only to protect the public against fraud, and to place the traffic under what the legislature, having regard to the character of the business, deems wholesome restraints. It comes within what is termed the 'police power,' and stands on the same ground as the acts relating to hawkers and peddlers, auctioneers, pawnbrokers, and others, of which there are numerous examples. *Commonwealth* v. *Ober,* 12 Cush. 493; *Commonwealth* v. *Blackington,* 24 Pick. 352; *Blair* v. *Forehand,* 100 Mass. 136; *Fisher* v. *McGirr,* 1 Gray 1, 27; Cooley, Const. Lim., 596." Statutes similar to the one before us have been upheld in other states also. *State* v. *Harrington,* 68 Vt. 622, 35 Atl. 515, 34 L. R. A. 100; *City of Carrollton* v. *Bazzette,* 159 Ill. 284, 42 N. E. 837, 31 L. R. A. 522; *City of Peoria* v. *Gugenheim,* 61 Ill. App. 374; *City of Ottumwa* v. *Zekind,* 95 Iowa 622, 64 N. W. 646, 29 L. R. A. 734, 58 Am. St. 447; *Wolf* v. *Runnels,* 90 Me. 253, 38 Atl. 100; *City of Greensboro* v. *Williams,* 124 N. C. 167, 32 S. E. 492; *Bohon's Assignee* v. *Brown,* 101 Ky. 354, 49 S. W. 450, 38 L. R. A. 503, 72 Am. St. 420; *Commonwealth* v. *Newhall,* 164 Mass. 338, 41 N. E. 647; *Ex parte Mosler,* 8 Ohio C. C. 324.

It is to be observed that the law under consideration is not an ordinance of a city or town, passed in pursuance of authority given to such municipal corporations by the legislature to license and regulate the business of transient mer-

chants, but that it is an act of the General Assembly, and that the amount of the fees to be paid for a license, and the restrictions imposed upon the occupation, are prescribed by the act itself.   For this reason, none of the cases in which the reasonableness or unreasonableness of the sum to be paid for the license, or the validity of the restrictions placed upon the occupation by municipal ordinances adopted by cities or towns, is of controlling authority.

The author of a recent work on constitutional law refers briefly but satirically to the Ohio statute regulating the business of transient merchants, but no reason is given by the author for his disapproval of the law, and no cases are referred to in support of his views.

In our opinion, the several sections of the act of March 11, 1901, which we have mentioned, are valid, and the judgment of the trial court is affirmed.