## GEORGE BURDICK

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon April 2, 1894.*

1. CONSTITUTIONAL LAW—*act relating to the sale of railroad tickets.* The act of 1875, entitled "An act to prevent frauds upon travelers, and owner or owners of any railroad, steamboat or other conveyance for the transportation of passengers," is not in violation of section 2 of article 2 of the constitution of the State, or the similar clause of the constitution of the United States which declares that "no person shall be deprived of life, liberty or property without due process of law."

2. SAME—*due process of law.* The constitution does not say that the disposition of property may not be limited or regulated when the interests of the public so require, but that no person shall be deprived of his property without due process of law. The phrase "due process of law," which is equivalent to the words "law of the land," as used in magna charta, means, "in the due course of legal proceedings according to those rules and forms which have been established for the protection of private rights."

3. An act of the legislature which transfers the property of one man to another without his consent, is not a constitutional exercise of legislative power, because, if effectual, it operates to deprive a man of his property without due process of law.

4. SAME—*regulating railroads.* The franchises of railroads acting under charters or acts of incorporation are of a public nature, so far as the safety, convenience and comfort of passengers are concerned, and reasonable regulations affecting the conduct of such public employment are fit subjects of legislative action. The law-making power may provide for remedying such evils as may be found to exist, and in so doing may sometimes impose restrictions, which are deemed necessary upon the use and enjoyment of property.

5. SAME—*impairing obligation of contracts.* An act of the legislature tending to impair the obligation of a contract is inoperative and of no effect as to contracts existing at the time of the passage of the act, but as to future contracts it will not be rendered inoperative by the provisions of the State and Federal constitutions, which forbid the passage of laws impairing the obligation of contracts.

6. SAME—*inter-State commerce—police power.* The deposit in Congress of the power to regulate commerce between the States does not deprive the States of their police power. Under that power a State may legislate to promote domestic order, morals and safety; to pro-

tect the lives, limbs, quiet and property of all persons within the State to secure the general comfort, health and prosperity of the State; and to prevent crime, pauperism, disturbance of the peace, and all forms of social evils.

7. The State can not invade the domain of the national government, or assume powers properly belonging to Congress. In relation to the subject of commerce, including inter-State passenger travel, the State can not place any obstacle in the way of such travel or impose any burden on it. But many acts of a State may affect or influence commerce without amounting to a regulation of it.

8. State legislation which is not an obstacle to inter-State commerce and imposes no burden upon it, and which comes within a proper exercise of the police power, is not unconstitutional, as infringing upon the powers of Congress.

9. SAME—*police regulation.* A statutory requirement that railroad tickets shall be sold by agents duly authorized to sell the same, and requiring such agents to exhibit their authority to act in making such sales, is merely a police regulation as to the manner in which the business of the carrier shall be conducted, and such a regulation does not violate section 22 of article 4 of the State constitution, which prohibits the passage of special laws granting special and exclusive privileges.

10. No privilege or immunity of any party has been abridged by the act of 1875, entitled "An act to prevent frauds upon travelers, and owner or owners of any railroad, steamboat or other conveyances for the transportation of passengers." The right of conducting the business of selling railroad and steamboat tickets is curtailed and hedged about by certain restrictions which the legislature deemed necessary to prevent frauds upon travelers and public carriers, and which the government may justly prescribe for the general good.

11. CONTRACT—*railroad ticket.* A railroad ticket containing the name of the railway company, the words "A to B," the signature of the general ticket agent, and certain figures or numbers, is not a contract, but is merely the evidence of a contract, or a mere receipt taken or voucher adopted for convenience, to show that the passenger has paid his fare from one place to another.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. J. P. ROBERTS, Judge, presiding.

Messrs. HILL & MARTIN, for the plaintiff in error:

The act of 1875 is in violation of section 2 of article 2 of the State constitution, and also of the Federal constitution, which provides that "no person shall be deprived of life, lib-

602    BURDICK v. THE PEOPLE.

Brief for the People.    Opinion of the Court.

erty or property without due process of law." The act also impairs the obligation of contracts. Federal Const. art. 1, sec. 10; *McCracken* v. *Hayward*, 2 How. 612; *Ogden* v. *Sanders*, 12 Wheat. 259; *Johnson* v. *Higgins*, 3 Metc. 566.

The act is in contravention of clause 3 of section 8, article 1, of the Federal constitution, relating to inter-State commerce.

Mr. MAURICE T. MOLONEY, Attorney General, Mr. J. W. HERBERT, State's Attorney, Mr. W. S. FORREST, and Mr. M. ROSENTHAL, for the People:

The statute is constitutional and valid. *Commonwealth* v. *Wilson*, 14 Phil. 384; *Fry* v. *State*, 63 Ind. 552.

A railway ticket is not a contract. *Commonwealth* v. *Wilson*, 14 Phil. 384; Ray on Negligence of Passengers, 198, 199, 494, 495; Beach on Railways, sec. 869.

The act of 1875 does not deprive a person of property without due process of law. *Munn* v. *People*, 69 Ill. 80; *Commonwealth* v. *Wilson*, 14 Phil. 384.

It does not interfere with inter-State commerce. *Railroad Co.* v. *Husen*, 5 Otto, 465.

The act does not fall within the definition of special legislation. *Railway Co.* v. *Mackey*, 127 U. S. 205.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This was an indictment against plaintiff in error for wrongfully and unlawfully selling to one L. H. Myers one certain railroad ticket, entitling the holder thereof to travel upon the Illinois Central Railroad from Cairo in Illinois to Chicago in the same State in violation of the following statute of Illinois:

"*An Act to prevent frauds upon travelers, and owner or owners of any railroad, steamboat or other conveyance for the transportation of passengers.—Approved April 19, 1875; in force July 1, 1875.*

"SECTION 1. Be it enacted by the People of the State of Illinois, represented in the General Assembly: That it shall

be the duty of the owner or owners of any railroad or steamboat for the transportation of passengers, to provide each agent who may be authorized to sell tickets or other certificates entitling the holder to travel upon any railroad or steamboat, with a certificate setting forth the authority of such agent to make such sales, which certificate shall be duly attested by the corporate seal of the owner of such railroad or steamboat.

"Sec. 2. That it shall not be lawful for any person not possessed of such authority so evidenced, to sell, barter or transfer, for any consideration whatever, the whole or any part of any ticket or tickets, passes or other evidences of the holder's title to travel on any railroad or steamboat, whether the same be situated, operated or owned within or without the limits of this State.

"Sec. 3. That any person or persons violating the provisions of the second section of this act shall be deemed guilty of misdemeanor, and shall be liable to be punished by a fine not exceeding $500, and by imprisonment not exceeding one year, or either or both, in the discretion of the court in which such person or persons shall be convicted.

"Sec. 4. That it shall be the duty of every agent who shall be authorized to sell tickets or parts of tickets, or other evidences of the holder's title to travel, to exhibit to any person desiring to purchase a ticket, or to any officer of the law who may request him, the certificate of his authority thus to sell, and to keep said certificate posted in a conspicuous place in his office for the information of travelers.

"Sec. 5. That it shall be the duty of the owner or owners of a railroad or steamboat, by their agents or managers, to provide for the redemption of the whole or any parts or coupons of any ticket or tickets as they may have sold, as the purchaser, for any reason, has not used and does not desire to use, at a rate which shall be equal to the difference between the price paid for the whole ticket and the cost of a ticket be-

tween the points for which the proportion of said ticket was
actually used; and the sale by any person of the unused por-
tion of any ticket, otherwise than by the presentation of the
same for redemption, as provided for in this section, shall be
deemed to be a violation of the provisions of this act, and
shall be punished as is hereinbefore provided: *Provided*, that
this act shall not prohibit any person who has purchased a
ticket from any agent authorized by this act, with the *bona
fide* intention of traveling upon the same, from selling any
part of the same to any other person.

"Sec. 6. Any railroad or steamboat company that shall, by
any of its ticket agents in this State, refuse to redeem any of
its tickets or parts of tickets, as prescribed in section 5 of
this act, shall pay a fine of $500 for each offense to the Peo-
ple of the State of Illinois, and it shall be unlawful for said
company, subsequent to such refusal, to sell any ticket or
tickets in this State until such fine is paid." (2 Starr & Cur.
Stat. page 1951).

The defendant, before pleading to the indictment, moved
to quash it upon the alleged ground, that said Act was in con-
travention of the constitutions of the United States and of
the State of Illinois, but said motion was overruled and ex-
ception taken. The court refused to give for the defendant
an instruction, to the effect that said Act was in contraven-
tion of said constitutions and therefore void, to which refusal
defendant excepted. The jury found the defendant guilty;
motions for new trial and in arrest of judgment were over-
ruled to which exception was taken; and judgment was en-
tered upon the verdict, fining defendant $500.00, to which,
also, exception was taken.

The subject presented for consideration is the constitution-
ality of the above Act, and we will consider the objections to
its validity in the order, in which they are presented by the
counsel for the plaintiff in error in their brief.

*First,* it is contended that the Act violates section 2 of article 2 of the constitution of Illinois, which provides, that "no person shall be deprived of life, liberty or property without due process of law;" and that it also violates the provisions of a similar character in the Federal constitution. (U. S. Cons. articles 5 and 14 of Amendments; 1 Starr & Cur. Ann. Stat. pages 36, 38, 99). The position of counsel is that, when a man purchases tickets or other certificates entitling the holder to travel upon any railroad, etc., as stated in the Act, such tickets are his property, and that the legislature has no authority to pass an Act depriving the holder of such property of the right to sell it to whom he pleases. The constitution does not say, that the disposition of property may not be limited or regulated where the interests of the public so require, but that no person shall be "deprived" of his property without due process of law. The phrase, "due process of law," is the equivalent of the words, "law of the land," as used in Magna Charta, and means, "in the due course of legal proceedings according to those rules and forms which have been established for the protection of private rights." (*Board of Education* v. *Bakewell,* 122 Ill. 339; *Rhinehart* v. *Schuyler,* 2 Gilm. 473; *Davidson* v. *New Orleans,* 96 U. S. 97; Cooley on Cons. Lim.—5 ed.—marg. page 356, top page 435.) An Act of the legislature is not necessarily the "law of the land." A State cannot make anything "due process of law" which, by its own legislation, it declares to be such. An Act of the legislature, which transfers the property of one man to another without his consent, is not a constitutional exercise of legislative power, because, if effectual, it operates to deprive a man of his property without "due process of law." (*Davidson* v. *New Orleans, supra; Taylor* v. *Porter,* 4 Hill, 140; *Rohn* v. *Harris,* 130 Ill. 525; *Ervine's Appeal,* 16 Penn. St. 256; *Hoke* v. *Henderson,* 4 Dev. 1.)

If, therefore, the above Act of 1875 operates to deprive the holder of a legally purchased ticket of his property rights

therein, it must be declared to be void. But, upon turning to section 5 of the Act, we find, that it authorizes the original purchaser of a ticket from an authorized agent to re-sell the whole, or any unused part of such ticket, to the owner of the railroad or steamboat who sold it to him, or to sell any part of it to any other person, if the original purchase of it from the agent was with the *bona fide* intention of traveling upon it. The purchaser is entitled to have his ticket redeemed by the railroad or steamboat owner at a rate fixed by the terms of section 5, but his right of sale is not even limited to such owner provided only his purchase was made in the mode and for the purpose stated in the proviso to the section. In view of the provisions contained in sections 5 and 6, we fail to see how the owner of the ticket is deprived of his property in it. His ticket is not destroyed, nor is there any very serious limitation upon his use of it.

The design of the Act, as stated in its title, is to prevent frauds upon travelers and owners of railroads, steamboats and other conveyances for the transportation of passengers. The business of a common carrier is a public employment. The franchises of railroads, acting under charters or acts of incorporation, are of a public nature so far as the safety, convenience and comfort of passengers are concerned. Reasonable regulations, affecting the conduct of such public employments, are fit subjects for legislative action. The law making power may provide means for remedying such evils as, in its opinion, may exist in the management of these public agencies of transportation, and in doing so, it may sometimes impose restrictions, which are deemed to be necessary, upon the use and enjoyment of property. A man is not deprived of his property unless it is taken away from him, so that he is divested of his title and possession. To limit the use and enjoyment of property by legislative action is not to take it away from the owner, when the property, whose use and enjoyment are so limited, is invested in a business

affected with a public use, or is used as an accessory in carrying on such businsss. (*Munn* v. *People*, 69 Ill. 80; *Commonwealth* v. *Wilson*, 14 Phila. Rep. 384). We are, therefore, of the opinion, that the Act under consideration does not violate section 2 of the Bill of Rights.

*Second*, the Act is alleged to contravene the provisions of the Federal and State constitutions, which forbid the passage of laws impairing the obligation of contracts. (U. S. Cons. Art. 1, sec. 10; Ills. Cons. Art. 2, sec. 14; 1 Starr & Cur. Stat. pages 31 and 105.)

The tickets, proven to have been sold by plaintiff in error, contain only the name of the Railroad Company, the words "Cairo to Chicago," the signature of the general ticket agent, and certain figures or numbers. It has been held, that such a ticket is not a contract but merely the evidence of a contract, or a mere receipt taken or voucher adopted for convenience, to show that the passenger has paid his fare from one place to another. (*Logan* v. *Hannibal and St. Jo. R'y Co.* 12 Am. & Eng. R. R. Cases, 141; 2 Redfield on Law of Railroads —6 ed.—page 303; Ray's Neg. of Imp. Duties, Carriers of Pass. page 495; *Commonwealth* v. *Wilson, supra*). But, if it be admitted that the ticket is a contract, the statute would only be inoperative and of no effect as to contracts existing at the time of its passage; it would be valid and constitutional as to future contracts. It cannot be said, that the Act of 1875 impaired the obligation of any contract connected with the tickets upon the sale of which the present indictment is predicated. The tickets sold by plaintiff in error were issued by the railroad company in 1893, eighteen years after the passage of the Act. The plaintiff in error must be presumed to have known, that the sales of the tickets by him were criminal acts. (*Fry* v. *The State*, 63 Ind. 552; *Commonwealth* v. *Wilson, supra*).

*Third*, the Act is charged with contravening the third clause of section 8 of article 1 of the Federal Constitution, which

confers upon Congress the power to regulate commerce among the several States.   (1 Starr & Cur. Stat. page 30).

In the present case, the tickets sold only entitled the holder to travel between points located wholly within the State of Illinois.   But the portion of the Act, upon which the present objection is founded, is the prohibition, contained in the second section, against the sale of tickets entitling the holder to travel on any railroad or steamboat, "whether the same be situated, operated or owned within or without the limits of this State."

It is held by the Supreme Court of the United States, that inter-state commerce, the regulation of which is within the exclusive power of Congress, includes inter-state transportation of passengers.   But the deposit in Congress of the power to regulate commerce between the States was not intended to deprive the States of their police power.   Under its police power, a State may legislate to promote domestic order, morals and safety; to protect the lives, limbs, quiet and property of all persons within the State; to secure the general comfort, health and prosperity of the State; to prevent crime, pauperism, disturbance of the peace, and all forms of social evils.   The State cannot invade the domain of the national government, or assume powers properly belonging to Congress.   In relation to the subject of commerce, including inter-state passenger travel, the State cannot place any obstacle in the way of such travel, or impose any burden upon it.   But many acts of a State may affect or influence commerce without amounting to a regulation of it.   State legislation, which is not an obstacle to inter-state commerce and imposes no burden upon it, and which comes within a proper exercise of the police power, is not unconstitutional as infringing upon the powers of Congress.   The Act of 1875 is, we think, such a species of State legislation.   The duties, which it imposes upon the carriers therein named and their agents, can not interfere with the freedom of inter-state travel.

Such travel is not impeded, because tickets are required to be purchased from agents of the carrier who are provided with certificates of their authority. The limitation of the sale of tickets to such agents may be a restraint upon the business of scalpers and ticket brokers, but cannot be regarded as a burden upon inter-state commerce. If the body of the Act of 1875 be read in connection with its title, it must have been the opinion of the legislature, that the restriction of sales of tickets to authorized agents was necessary to prevent frauds upon travelers and carriers, and to remedy the evils growing out of the practices of scalpers and ticket-brokers, as described by Mr. Ray in his work on Negligence of Imposed Duties, Passenger Carriers, at pages from 491 to 498 inclusive. Viewed in this light, the act in question amounts to nothing more than the regulation of a public employment under the police power of the State.

The business of the carrier being a proper subject for the exercise of the police power, its necessary incidents and adjuncts are also subject thereto. As the issuing and use of tickets are required in such business, their sale is an incident thereof, and may be regulated by legislative action. It is the province of the legislature to determine the nature and character of such regulations, and the judiciary is not called upon to consider whether they are wise or unwise. The views herein expressed are sustained by the following authorities: *Frye* v. *The State, supra; Commonwealth* v. *Wilson, supra; People* v. *Walser,* 11 Legal News, 12; *Railroad Co.* v. *Husen,* 95 U. S. 465; *Patterson* v. *Kentucky,* 97 id. 501; Cooley on Cons. Lim. —5 ed.—marg. pages 574 and 597.

We do not think that the Act violates the constitutional provision conferring upon Congress the power to regulate inter-state commerce.

*Fourth,* it is claimed that the Act violates that part of section 22 of article 4 of the constitution of Illinois, which provides that the General Assembly shall not pass special laws

39—149 ILL.

"granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." (1 Starr & Cur. Stat. pages 119, 120).

Counsel contend that, by the terms of the Act, a certain class of persons, namely, railroad ticket agents, are permitted to sell tickets, and are thereby granted a special privilege. We do not think that there is any force in this contention. It is disposed of by what has already been said in regard to the validity of the Act as an exercise of the police power of the State. The requirement, that tickets shall only be sold by agents authorized so to do, is merely a police regulation as to the manner in which the business of the carrier shall be conducted. From the nature of things, only common carriers can, in the first instance, issue or sell tickets for passage in their own conveyances, or over their own lines. They have no more a monopoly of the ticket business than a manufacturer has of the articles which he manufactures. The authority to the agent is not an authority to sell tickets generally for all other carriers, but only to sell them for the particular carrier providing the certificate of authority. The act would seem to impose upon the carrier a burden and not to grant a privilege or immunity, as the repurchase of unused tickets is required, and, in order to prevent frauds, the sale of tickets can only be made through agents authorized to sell in the particular mode designated by the statute.

Substantially the same phraseology contained in section 1 of the present Act, to which counsel object as amounting to special legislation, is to be found in an Act passed by the Legislature of Indiana, which was upheld by the Supreme Court of that State, as being consistent with a constitutional requirement forbidding the legislative grant of exclusive privileges or immunities to any citizen or class of citizens. (*Fry* v. *The State, supra*). We see no good reason for adopting a different conclusion.

Nor can it be said that the law abridges "the privileges or immunities of citizens of the United States." (U. S. Cons. Sec. 1, Art. 14 of Amendments; 1 Starr & Cur. Stat. page 38). The privileges or immunities referred to in the fourteenth amendment of the Federal Constitution are those which are fundamental, such as "protection by the government; the enjoyment of life and liberty, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety; subject, nevertheless, to such restraints as the government may justly prescribe for the general good of the whole." No privilege or immunity of the plaintiff in error has been abridged by the Act of 1875. The right of conducting the business of selling railroad and steamboat tickets is curtailed and hedged about by certain restrictions, which the legislature deemed necessary to prevent frauds upon travelers and public carriers. But these restrictions amount only to "such restraints as the government may justly prescribe for the general good of the whole." (*Corfield* v. *Corgell*, 4 Wash. C. C. Rep. 371; *Slaughter House Cases*, 16 Wall. 36).

In the case at bar, our conclusion is, that the statute of this State, above quoted, is not in conflict with the Federal Constitution or with the constitution of this State, but was a legitimate exercise by the Legislature of the police powers of the State. Accordingly we hold, that no error was committed by the court below in its rulings above indicated.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.**

---

*GEORGE BURDICK *v.* THE PEOPLE OF THE STATE OF ILLINOIS.

Per CURIAM: This case is in all respects the same as *Burdick* v. *The People, supra*, except that the indictment charges a sale of tickets to a different person. The questions involved in the two cases are the same, and the result here is determined by the result there. Accordingly the judgment of the Circuit Court is affirmed.

*Judgment affirmed.*