[No. 5829. Decided December 27, 1905.]

*In the Matter of the Petition of* HUGH J. O'NEILL *for a Writ of Habeas Corpus.*[1]

STATUTES—TITLE OF ACT—SUFFICIENCY. An act entitled, "An act to prevent fraud upon travelers and prescribing where, how, and by whom railroad tickets shall be sold," etc., is sufficient to embrace provisions prohibiting the business of ticket brokerage except by authorized railroad agents.

CONSTITUTIONAL LAW—POLICE POWER—PROHIBITING SALE OF RAILROAD TICKETS—LICENSED AGENTS—STATUTORY REGULATION. Laws 1905, p. 376, providing that none but a duly authorized agent of a railroad company shall be permitted to sell railway transportation, does not deprive a citizen, who was already established in such business prior to the enactment of the law, of property without due process of law, or unduly interfere with his liberty to pursue his occupation; since it is a valid exercise of the police power to make reasonable regulations to protect the traveling public and prevent the perpetration of frauds in the sale of railway tickets.

[1]Reported in 83 Pac. 104.

SAME—EQUAL PROTECTION OF LAWS—SPECIAL PRIVILEGES. Laws 1905, p. 376, prohibiting the business of railroad ticket brokerage, and requiring railroad companies to duly commission all agents authorized to sell tickets and to redeem unused tickets, does not deny the equal protection of the laws, since it rather imposes duties upon, than grants special privileges to, the railroad companies.

SAME—DELEGATION OF LEGISLATIVE POWER. An act making it a misdemeanor for any one except authorized agents of a railroad company to sell railroad tickets, and requiring companies to commission their agents, is not unconstitutional as delegating to the companies the power to say who are guilty of the offense by issuing or withholding the authority.

SAME—STATUTES—PARTIAL UNCONSTITUTIONALITY. The unconstitutionality of part of an act imposing the burden of proof upon the accused would not affect the balance of the act declaring the selling of railway tickets by unauthorized agents to be a misdemeanor.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered August 24, 1905, upon overruling a demurrer to the return to a writ of habeas corpus, remanding to custody a prisoner charged with the offense of selling railway tickets without a license. Affirmed.

*Richard Saxe Jones* and *William H. Brinker (Graves & Graves,* of counsel), for appellant. The appellant's business was "property" within the protection of the constitution. *Ex parte Garland,* 4 Wall. 333, 18 L. Ed. 366; *Cummings v. Missouri,* 4 Wall. 277, 18 L. Ed. 356; *Davis v. Gray,* 16 Wall. 203, 21 L. Ed. 447; *Phyfe v. Wardell,* 5 Paige 268; *Armour v. Alexander,* 10 Paige 571; *Boon v. Moss,* 70 N. Y. 465; *Metropolitan Nat. Bank v. St. Louis Disptach Co.,* 36 Fed. 722; *Dwight v. Hamilton,* 113 Mass. 175; *Grow v. Seligman,* 47 Mich. 607, 11 N. W. 404, 41 Am. Rep. 737; *Smith v. McCullough,* 104 U. S. 25, 26 L. Ed. 637; *Pennoyer v. Neff,* 95 U. S. 714, 24 L. Ed. 565; *Scott v. McNeal,* 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896; *In re Aubrey,* 36 Wash. 308, 78 Pac. 900. The power to take property is a judicial, not a legislative function. Constitution, art. 1, § 16; Tiedeman, Lim. Police Power, 277. The act unduly restricts the liberty to pursue his trade or business. *Allgeyer*

*v. Louisiana,* 165 U. S. 578, 41 L. Ed. 832; *State v. Brown,* 37 Wash. 97, 79 Pac. 635; *People ex rel. Tyroler v. Warden,* 157 N. Y. 116, 51 N. E. 1006, 68 Am. St. 763, 43 L. R. A. 264; *Butchers Union etc. Co. v. Crescent City Live-Stock etc. Co.,* 111 U. S. 746, 4 Sup. Ct. 652, 28 L. Ed. 585. The act takes the business of the appellant from him and hands it over to the railway corporations without one dollar of compensation. *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220. The act complained of denies to the petitioner the equal protection of the laws. *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679. The act delegates to the railroads the power to make an act criminal. *Stoutenburgh v. Hennick,* 129 U. S. 141, 9 Sup. Ct. 256, 32 L. Ed. 637; *United States v. Blasingame,* 116 Fed. 654; *Field v. Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; *Harmon v. State,* 66 Ohio St. 249, 64 N. E. 117, 58 L. R. A. 618; *Schaezlein v. Cabaniss,* 135 Cal. 466, 67 Pac. 755, 87 Am. St. 122, 56 L. R. A. 733; *Anderson v. Manchester Fire etc. Co.,* 59 Minn. 182, 60 N. W. 1095, 63 N. W. 241, 50 Am. St. 400, 28 L. R. A. 609; *Dowling v. Lancashire Ins. Co.,* 92 Wis. 63, 65 N. W. 738, 31 L. R. A. 112; *O'Neil v. American Fire Ins. Co.,* 166 Pa. St. 72, 30 Atl. 943, 45 Am. St. 650, 26 L. R. A. 715. Every doubt should be resolved in favor of the liberty of the citizen. *In re Farrar,* 133 Fed. 254; *The Enterprise,* Fed. Cas., No. 4499; Bishop, Written Laws, § 194.

*Kenneth Mackintosh, James F. McElroy, Arthur C. Spencer,* and *Dan J. Malarkey,* for respondent, to the point that anti-scalping laws are constitutional, cited: *Fry v. State,* 63 Ind. 552, 30 Am. Rep. 238; *Burdick v. People,* 149 Ill. 600, 36 N. E. 948, 41 Am. St. 329, 24 L. R. A. 152; *State v. Corbett,* 57 Minn. 345, 59 N. W. 317, 24 L. R. A. 498; *State v. Bernheim,* 19 Mont. 512, 49 Pac. 441; *State v. Clark,* 109 N. C. 739, 14 S. E. 84; *Commonwealth v. Keary,* 198 Pa. St. 500, 48 Atl. 472; *Jannin v. State,* 42 Tex. Cr.

631, 51 S. W. 1126, 62 S. W. 419, 96 Am. St. 821; *State ex rel. Tyroler v. Warden*, 157 N. Y. 116, 51 N. E. 1006, 68 Am. St. 763, 43 L. R. A. 264.

HADLEY, J.—This appeal is from an order denying release upon a writ of *habeas corpus*. The writ was issued by this court upon application therefor, and was made returnable before the Honorable Mitchell Gilliam, one of the judges of the superior court of King county. From the denial of release by that court, this appeal is prosecuted. The appellant was arrested by the sheriff of King county, by authority of a warrant issued by John B. Gordon, a justice of the peace in said county. The warrant was issued in pursuance of a complaint filed with said justice, charging appellant with selling, issuing, and dealing in, railroad passenger transportation, and with setting up, establishing, maintaining, and conducting within this state an office and place of business for the sale, exchange, and transfer of the whole or any part of railroad tickets and other evidences of a right to travel upon railroads, within or without the limits of this state, without keeping a certificate setting forth his authority to sell, issue, or deliver railroad transportation. The acts charged constitute a misdemeanor in this state, under the terms of chapter 180, Laws 1905, p. 376. The sole contention of appellant is that said act is unconstitutional and void.

The first contention is that the title of the act is insufficient. It is suggested that the real object of the act is to prohibit the business of ticket brokerage, and that the title does not comprehend that subject. The title is as follows:

"An act to prevent fraud upon travelers and prescribing where, how, and by whom railroad tickets shall be sold, and providing the terms upon which the redemption of the whole or any part of such tickets as may not have been used shall be made, and prescribing penalties for the violation of this act."

It will be seen that the title specifically states that the act

12—41 WASH.

prescribes "where, how, and by whom railroad tickets shall be sold." It must be apparent to any one reading the title that the act discloses what persons shall not sell such tickets. The act is therefore not void on account of its title.

Appellant next contends that the act is void in that it deprives him of his business and property without due process of law, and interferes with his liberty as a citizen in the pursuit of his business. The substance of the act is that no one but a duly authorized agent of a railroad company shall be permitted to sell railway transportation, and he shall be provided with a certificate from the company showing his authority. Such agent must have a fixed place of business, and must keep the certificate of his authority posted in a conspicuous place in such place of business. It is made unlawful for any one who is not possessed of such certificate, and who has not posted it as aforesaid, to sell or offer for sale railroad tickets or other evidence of a right to travel upon any railroad, whether the same be situated or owned or operated within or without the limits of this state. It is also made unlawful for one to set up, establish, maintain, conduct, or operate within this state any office or place of business for the sale, exchange, or transfer of evidences of a right to travel upon any railroad unless he possesses such certificate of authority and has posted it as aforesaid. It is also provided that any railroad company doing business in this state shall redeem, upon presentation to any of its ticket agents, the whole or any part of an unused ticket which has been issued by such company.

Appellant argues that the act violates § 3, art. 1, of the state constitution, and art. 5, and § 1, art. 14, amendments to the constitution of the United States. He states that for many years he has been a resident of Seattle, and that during that time he has pursued the occupation of a broker and dealer in railway and other tickets for transportation of passengers over various transportation lines in the state of Washington; that he bought from all persons desiring to sell, and sold to

all persons desiring to buy, such tickets, and that in such way
he had established a permanent and lucrative business.    He
insists that such business was property of which he may not
be deprived within the constitutional provisions cited which
prohibit the taking of property without due process of law.
If the business of buying and selling tickets evidencing the
right to railway transportation is not a subject within the
regulative powers of the state, then perhaps appellant's busi-
ness in dealing in such tickets has become property in his
hands which cannot be taken away.

Railway corporations exist by authority of the state, and
are required to serve the public.    One of the purposes of
this act, as specified in its title, is "to prevent fraud upon
travelers."    It is true there is no charge of actual fraud
made against appellant, but the declared purpose of the
statute is to prevent the possibility of fraud, and the method ·
of regulation to prevent it has been violated by appellant.
If it is within the power of the state to establish general
rules designed to prevent fraud in the premises, appellant
cannot be heard to say that the violation of those rules does
not result in fraud.    We are unable to see why the state,
which creates the corporation and requires that it shall serve
the public, has not the power to adopt reasonable regulative
means applicable to that service, whereby no fraudulent im-
position may be visited upon the · public.    If, within the
opinion of the legislature as it is supposedly advised from
experience of citizens of the state, the sale of railway tickets
by others than the railway companies and their duly author-
ized agents results in fraudulent imposition upon travelers,
then it would seem to be within the regulative police power
of the state to adopt means to prevent it.

The thing to be sold, viz., the right of transportation over
the railway line, originally belongs to the company and is
its property.    The company is under obligation to sell that
property to all who apply for it, and who tender the neces-
sary price.    The state, by the act in question, has said that

the original holder of that property and its duly authorized
agents shall alone be permitted to sell it. Appellant's posi-
tion is that he has the right to traffic in the property after
the railway company has sold it, and that to deprive him
of that privilege is to violate a constitutional right. The
mere right to continue in the future to buy and sell property
of the class of railway transportation, which is primarily
owned by the railroad company to be sold to the individual
traveler for transportation and not for the purpose of subse-
quent traffic therein for speculation and gain, we think can-
not be such an individual property right as comes within the
constitutional provisions, when considered as against the
regulative power of the state concerning such transportation,
and in the interest of protecting the property rights therein
of the great number of people who become the owners of
such property. Such traffic bears an important relation to
the welfare of the general traveling public who are patrons
of the railway companies, quasi-public corporations created
to serve the public.

However, we do not approach this subject as a new ques-
tion in the courts, and we need not discuss it as such. That
the subject-matter of this statute is a proper subject for po-
lice regulation has been repeatedly held. We are aware that
it is difficult to define the scope of the term "police regula-
tion." It has been the subject of much discussion by the
courts, and its application has sometimes been sarcastically
criticised as the use of an indefinable something to sustain
legislation unsupportable upon any other ground. However,
it is the term which is used to define a power which resides
in the state, and it has been expressly held that legislation
of the character of that now before us, and upon the same
subject, comes within its scope. *Fry v. State,* 63 Ind. 552,
30 Am. Rep. 238; *Burdick v. People,* 149 Ill. 600, 36 N. E.
948, 41 Am. St. 329, 24 L. R. A. 152; *State v. Corbett,*
57 Minn. 345, 59 N. W. 317, 24 L. R. A. 498; *State v.
Bernheim,* 19 Mont. 512, 49 Pac. 441; *Jannin v. State,* 42

Tex. Crim. 631, 51 S. W. 1126, 62 S. W. 419, 96 Am. St. 821. While not expressly discussed, yet the police power in the premises was necessarily recognized in, *State v. Ray,* 109 N. C. 736, 14 S. E. 83, 14 L. R. A. 529; *Commonwealth v. Keary,* 198 Pa. St. 500, 48 Atl. 472. It was also expressly stated in some of the decisions that such legislation does not deprive one of his property without due process of law. While that subject was not particularly discussed in the opinions of all the cases cited, yet such was the necessary effect of the decisions. In *Ex parte Lorenzen,* 128 Cal. 431, 61 Pac. 68, 79 Am. St. 47, 50 L. R. A. 55, the same was in effect held with relation to an ordinance of San Francisco, requiring that street car transfer tickets should be issued and delivered within the car from which the transfer is made, and received only within the car to which it is made; and forbidding any person except the conductor or agent of the street car line to give, sell, or issue any transfer check.

Appellant argues that *Burdick v. People, supra,* should be distinguished from the case at bar, for the reason, as he alleges, that the Illinois act provided that a purchaser of a *bona fide* ticket with the intention of traveling upon the same might sell any part of it to another person, and it is therefore contended that the act was limited to the prevention of forgery and the fraudulent sale of tickets. The provision was that one who had so purchased a ticket "from any agent authorized by this act" might so transfer it, and clearly had reference to a mere individual traveler. The effect of the statute, so far is it related to such as appellant, who did not buy from an "agent authorized," but who bought miscellaneously in the open market and transferred again, was the same as our own. Moreover, our statute provides that the individual ticket holder is entitled to have the whole or any part of an unused ticket redeemed by the company that issues it, and the same end, in effect, is therefore accomplished for him as was provided by the Illinois statute. Our attention has been called to the fact that an effort was made before

the supreme court of Illinois to have the opinion and judgment in the *Burdick* case annulled, on the alleged ground that the opinion was obtained by collusion and fraud practiced on the court, and it is contended that the decision for that reason should not be regarded as a precedent. The court, however, declined to interfere with the opinion and judgment. *In re Burdick,* 162 Ill. 48, 44 N. E. 413. The majority opinion states: "No contention is made that the statute which was considered in the *Burdick* cases is unconstitutional, or that this court in the opinions filed by it did not correctly hold the law." So far as we are advised, the original opinion therefore stands to this day as the decision of the court of last resort upon this subject in that state.

Appellant's chief reliance is upon the authority of *People ex rel. Tyroler v. Warden of City Prison,* 157 N. Y. 116, 51 N. E. 1006, 68 Am. St. 763, 43 L. R. A. 264. The majority opinion in that case was written by Chief Justice Parker, and held a statute of similar import to our own to be unconstitutional as taking property without due process of law, and as interfering with the liberty of the citizen. There were three dissenting judges, and two somewhat extended dissenting opinions were written. Some of the opinions in cases we have cited above have referred to that case, and have followed the reasoning and conclusions of the dissenting judges rather than the argument of Judge Parker. It was also argued in some instances that the decision of the majority of the New York court was based upon a statute having a distinguishing feature. In Judge Parker's opinion he emphasized the fact that the statute did not limit the right to sell tickets to the particular transportation company over whose line the traveler desired to be conveyed, and he construed the statute to mean that, when one became the agent of the transportation company, he was thereby authorized to buy tickets of any other transportation company in the world, and to sell them to any person who might apply for

them. The statute had been previously construed otherwise by the supreme court of New York in the same case.

Some of the cases criticizing the New York case distinguished it on the above ground, inasmuch as the statutes with which they dealt limited the authority of the agent in the premises to the sale of tickets of the one transportation company. Such is also true of our statute, as will be seen by reference to § 1. The authority of the agent of the railroad company mentioned is "to sell its tickets," and is not extended to those of other companies. Since this case was argued, however, our attention has been called to the fact that the supreme court of New York has, since the *Tyroler* case, had under consideration a modified statute which eliminated the feature above mentioned, but that the court nevertheless felt impelled, on the authority of the *Tyroler* case, to hold the statute unconstitutional. *People ex rel. Fleischman v. Caldwell,* 64 App. Div. 46, 71 N. Y. Supp. 654. The last named decision was by the court of appeals affirmed by a mere memorandum decision based on the *Tyroler* case. *People ex rel. Fleischman v. Caldwell,* 168 N. Y. 671, 61 N. E. 1132. All the judges seem to have concurred except one who did not vote. It appears, therefore, that, as the matter now stands, there is practical accord of decision in the state of New York in favor of appellant's view.

Appellant argues that this court has recognized the authority of the *Tyroler* case in *State v. Brown,* 37 Wash. 97, 79 Pac. 635. That case involved a statute requiring one to submit to an examination and secure a license from the state dental board in order to "own, run, or manage" a dental office. It was held that, in so far as the statutory condition of ownership of a dental office was concerned, it was unconstitutional. In the opinion the court, in discussing general principles, cited and quoted from the opinion of Judge Parker in the *Tyroler* case. The language was cited as an illustration of a principle, but it cannot be said that this court then considered the force of the decision itself as applying to its

own subject-matter, when regarded in connection with the argument and weight of authority from other courts of last resort on the same subject-matter. Undoubtedly the weight of decision in reference to this particular class of statutes is against the holding of the New York court, and apparently that court stands practically alone.

Appellant also cites *In re Aubrey,* 36 Wash. 308, 78 Pac. 900, 104 Am. St. 952, as well as *State v. Brown, supra,* as sustaining the general principle for which he contends. The first case related to a statute which required a horseshoer to submit to an examination and pay a license fee as a condition precedent to the prosecution of his business. It was held to be an unconstitutional interference with his liberty to pursue such a business as horseshoeing. *State v. Brown,* as we have seen, dealt with a statute containing similar provisions with reference to the mere ownership of a dental office. Those are mere private occupations, and are unlike that of the common carrier whose business and duty it is to serve the public generally, and is therefore a proper subject for governmental control. Every one has the natural and constitutional right to pursue a lawful business, but we do not think he has such right to traffic in the transportation of a railway company without its permission or authority, as against the power of the state to regulate the sale of such transportation in the interest of the general public. A legislative act should be upheld unless there are clear constitutional reasons for holding otherwise. We are not convinced that such reasons exist in this case, and we are disposed to adopt the views of what we are constrained to believe is the weight of authority, having reference to decisions upon statutes treating of the same subject-matter in sister states. The arguments of the other courts may not be as elaborate as that of Judge Parker. His distinguished personality as a jurist and otherwise should cause his opinion and argument to receive much consideration, but his conclusions are not supported by the decisions of the other courts.

It is further argued that the act is objectionable in that it denies to the appellant the equal protection of the laws. It is claimed that it grants special privileges to railroad companies which are not enjoyed by other citizens. Cases we have cited hold that such a law does not grant special privileges, but that it rather imposes a burden upon railway companies, in that it limits the authority to sell tickets to the agent of the carrier appointing him, requires that the railroad company shall provide him with a certificate of authority, that no others shall sell transportation, and compels the company to redeem unused tickets. In view of all the requirements placed upon the railroad companies, we do not think it should be said that the act confers special privileges within constitutional prohibition. It, in effect, says to railroad companies, You must duly commission all persons who sell your transportation; no others shall purchase it, and you shall redeem all unused transportation.

It is also urged that the act delegates to railroad companies the power to create crimes, and to say who are criminals. It is argued that the companies may issue or withhold the certificates of authority at their own will, and that by withholding the certificate they are thereby empowered to make one a criminal who sells transportation without it. We do not think there is force in this argument. The statute simply says to the companies, You must appoint your own agents and certify as to their authority. This, as we have seen, is a reasonable regulation, and intended for the interest of the traveling public. It is true that the power to appoint the agents is in the railway company; but, for reasons already stated, the legislature has the undoubted power to say it shall be a misdemeanor for all others to engage in the sale of transportation. The railway companies must have agents to sell their transportation, and they cannot in reason be expected to appoint all who may apply. The mere fact that they may not appoint all applicants does not make any of the latter guilty of crime. If they become guilty, it is be-

cause, of their own volition, they persist in engaging in an act which the legislature says shall constitute a crime.

It is simply suggested by appellant that § 5 of the act provides that proof of certain facts shall be sufficient to establish a prima facie case. That involves a question that will arise upon the introduction of evidence at the trial upon the charge under which appellant is held. The matter now before us was determined upon demurrer to the return made by the officer to the writ of *habeas corpus*. What effect that portion of the statute may have upon the burden of proof is not now before us. Even if it should be held that that portion of the act changes the ordinary rule as to burden of proof and presumption of innocence, still it would not make the whole invalid. It purports to deal only with matters of evidence, and those are determinable at the trial.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, RUDKIN, CROW, DUNBAR, and ROOT, JJ., concur.