Argued 9 January, decided 6 February, 1906.

## STATE *v.* THOMPSON.

84 Pac. 476.

CARRIERS—TICKET SCALPERS.

1. Sections 1, 2, 3 and 4 of the act of 1905 relating to sales of railroad tickets (Laws 1905, pp. 422, 423), requiring railroad owners to provide their authorized ticket agents with a certificate of authority, and making it unlawful for a person not possessed of such a certificate from railroad owners to sell tickets or operate a ticket office, prohibits the ticket brokerage business, and restricts the sale of railroad tickets by others than duly constituted agents of the railroad owners issuing the same.

TICKET SCALPING — DUE PROCESS OF LAW.*

2. The act of 1905 concerning sales of railroad tickets (Laws 1905, pp. 422, 423), does not permit any one to be deprived of property without due process of law, as guaranteed by Const U. S. Amend. XIV, § 1, nor deprive any one of remedy by due course of law for injury done him in property, as guaranteed by Const. Or. Art. I, § 10, but is a reasonable regulation of the use of a certain kind of property.

TICKET SCALPING—OBLIGATION OF CONTRACTS—EX POST FACTO LAW.
3. Nor does that act impair the obligation of any contract, as prohibited by Const. Or. Art. I, ¿ 21, since it applies only to contracts made after it went into· effect, and, being prospective in its operation, is not ex post facto.

TICKET SCALPING—SPECIAL PRIVILEGES—EQUAL PROTECTION LAWS.*
4. Nor does that act authorize the abridgment of any privilege of any citizen, as guaranteed by Const. U. S. Amend. XIV, ¿ 1, nor does it grant to any citizen or· class of citizens special privileges, as prohibited by Const. Or. Art. I, ¿ 20.

CONSTITUTIONAL RIGHT TO SCALP RAILROAD TICKETS.
5. The right to deal in railroad tickets is not one of the fundamental rights of⁻ American citizenship guaranteed by Section 1 of the Fourteenth Amendment to the Constitution of the United States.

TICKET SCALPING—INTERSTATE REGULATION.
6. Nor does the fact that the act in question relates to tickets of railroads without, as well as to those of railroads within, the State, render it repugnant to Const. U. S. Art. I, ¿ 8, giving Congress power to regulate commerce among the several states.

TICKET SCALPING—CONSTITUTIONAL EXERCISE OF POLICE POWER.
7. Nor is it an unconstitutional prohibition of a lawful calling, but rather a lawful exercise of the police power of the State, enacted in order to protect trav--elers from fraud.

From Multnomah : ARTHUR L. FRAZER, Judge.

Statement by MR. JUSTICE HAILEY.

This is an appeal by C. H. Thompson from a judgment. of conviction for violating what is commonly known as the· anti-scalping act, passed at the last session of ·the legislature, and found on pages 422, 424 of the Session Laws of· 1905. The act provides in substance as follows:

Section 1. That it shall be the duty of the owner or own--ers or person or persons operating a railroad to provide· every agent who may be authorized to sell its tickets or other evidence of a right to travel upon any railroad with a certificate setting forth the authority of such agent to· make such sale, which certificate must be duly attested and signed.

Section 2. That every agent, person, firm, or corpora--tion engaged in selling, issuing, or dealing in railroad passenger transportation in this State must have a·fixed

---

*NOTE.—See note in 96 Am. St. Rep. 828-834, on Power of State to Control Sale· and Use of Passenger Tickets.

Read, also, note, Statutes Against Ticket Brokerage, 24 L. R. A. 152.

REPORTER.

place of business, and keep the certificate mentioned in Section 1 posted in a conspicuous place therein.

Section 3. That it shall be unlawful for any person mentioned in Section 2, who is not possessed of and has not posted the certificate mentioned, to sell, exchange, or transfer or offer for sale, exchange, or transfer, the whole or any part of a railroad ticket or pass or other evidence of a right to travel on any railroad, whether the same is situated within or without the limits of this State.

Section 4. That it shall be unlawful for any person named in Section 2 to set up, establish, or maintain, conduct, or operate within the State any office or other place for the sale, exchange, or transfer of railroad tickets, or any part thereof, or passes or any other evidence of a right to travel on any railroad within or without the limits of the State, unless such person is possessed of and has posted the certificate above mentioned.

Section 5 makes the displaying of any sign bearing certain words, without having posted the certificate as above mentioned, sufficient evidence to establish a prima facie case against the owner, proprietor, employee, or person in charge of said office or place of business.

Section 6 provides a penalty for the violation of sections 1, 2, 3 and 4.

Section 7 requires the owner or person operating any railroad in this State or any railroad doing business therein to redeem, upon presentation by the lawful holder thereof, the whole or any part of any unused ticket, and how such redemption shall be made, and the time within which it must be presented for redemption.

Section 8 provides a penalty for refusal, neglect or failure to redeem as provided in Section 7.     AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Martin Luther Pipes, Mr. Henry E. McGinn* and *Mr. John Francis Logan.*

For the State there was a brief over the names of *A. M. Crawford*, Attorney General, *John Manning*, District Attorney, *Daniel James Malarkey, James F. McElroy*, and *A. C. Spencer*, with oral arguments by *Mr. Manning* and *Mr. Malarkey.*

MR. JUSTICE HAILEY delivered the opinion of the court.

The only question raised on this appeal is the constitutionality of the foregoing act. It is claimed: First. That it violates the following sections of Article I of the state constitution: Section 10, which declares that "every man shall have remedy by due course of law for injury done him in person, property, or reputation"; Section 20, which declares that "No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens"; and Section 21, which declares: "No ex post facto law, or law impairing the obligations of contracts, shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this constitution." Second. It is claimed that it violates the Fourteenth Amendment to the Constitution of the United States, which provides that no state shall deprive any person of liberty or property without due process of law; and also violates Section 8 of Article I of the Constitution of the United States, which gives to Congress the power to regulate commerce among the several states. In this opinion, for brevity and clearness, we will apply the word "ticket" to all kinds of railroad transportation mentioned in the act, and use the word "railroad" as synonymous with the words in the act, owner or operator of any railroad. Before discussing the various contentions

made by the defendant as above set forth, we deem it neces-
sary to ascertain the effect of this law, and then will con-
sider the question whether or not it violates any of the
above provisions of our state and federal constitutions.

1. It is contended on the part of counsel for appellant
that this act does not prohibit the ticket brokerage busi-
ness, but permits it when done by one having the certifi-
cate provided for in the act, and only makes it a crime
when done by one not holding such certificate. Such a
construction of the law gives no force to the relation of
principal and agent necessarily created by the appointing
certificate. The holder of such certificate is the agent of
the railroad issuing the same, and his acts in selling, issu-
ing and dealing in tickets are the acts of his principal and
binding upon such principal, and are not the acts of such
agent in his individual capacity acting upon his own ac-
count. Again, such a construction also gives to the agent
authority not warranted by the terms of the act, by imput-
ing to him the right to deal generally in all tickets, whether
issued by the railroad appointing him its agent, or some
other railroad. By the terms of this act the agent is ex-
pressly limited in his authority to sell, issue or deal in
tickets issued by the railroad appointing him, and has no
authority by virtue of a certificate from one railroad to
sell or deal in the transportation of another railroad from
which he holds no certificate. The agent, as well as the
railroad appointing him, is limited to selling, issuing and
dealing in its tickets, and such agent must do so as its agent,
and cannot deal in tickets of another railroad for which
he is not agent. The right to issue, sell and deal in rail-
road transportation is thus limited to the railroad acting
through its agents, and it follows that when done by a
ticket broker or other person not authorized and acting as
agent for the railroad, such transactions are unlawful and
punishable under this act, and thus prohibited thereby.

2. The question, then, is: Does this law violate any of the constitutional provisions above mentioned? It is argued by counsel for the defendant that it takes property without due process of law. Defendant contends that the purchaser of a transferable ticket has a right to do with it as he pleases, and that to limit his right to sell or otherwise dispose of it is depriving him of his property therein without due process of law. It does not deprive the purchaser of a ticket of his property. It only limits the manner in which he shall use such property. It is one thing to take away the property of a person, and another to limit his use of such property. In the case of the purchase of a railroad ticket, the railroad sells it to the purchaser for the purpose of transportation over the lines of the seller, and not for barter or trade in the market, and he is not deprived of his property therein so long as he has the right to use it for the purpose for which it was sold to him, and the presumption is that he purchased it for the purpose for which it was sold. In addition to the right to use it for its original purpose, the act in question gives him the additional right to compel the seller to redeem it, in the event the purchaser fails to use it, if presented for redemption within a certain time.

3. It is next contended that the law violates the constitutional provision which prohibits the passing of any law impairing the obligation of contracts. This contention is not tenable, for the reason this constitutional provision only prohibits the passage of laws impairing the obligations of contracts in existence at the time the law took effect, and therefore it has no application to the case at bar, the ticket in controversy having been sold by the railroad after this law went into effect. This law is prospective and not retrospective in effect, and is clearly not an ex post facto law, as it does not undertake to punish the defendant

47 OR.——32

for an act done prior to the time it took effect, the doing of which was at that time not a crime.

4. Counsel for defendant argue that the law grants privileges to some persons not granted to others upon the same terms, and therefore violates Section 20, Art. I of the state constitution, and the fourteenth amendment to the federal constitution, and cites in support of this contention *In re Oberg*, 21 Or. 406 (28 Pac. 130, 14 L. R. A. 577), in which it was claimed that an act providing "that no officer or seaman of a sea-going vessel or ship shall be arrested or imprisoned for debt; and any officer executing a process of arrest for debt upon such officers or seamen shall upon conviction * * be fined," etc., was in violation of the foregoing section of the constitution, but the act was upheld by this court on the ground that since there was no discrimination between persons of the class of sailors mentioned, it was not unconstitutional. The court said: "All sailors of a sea-going vessel within the prescribed limits are treated alike, and entitled to enjoy the privileges or immunities granted. The act prescribes the same rule of exemption to all persons placed in the same circumstances. It does not grant a sailor immunity from arrest for debt, and refuse it to his neighbor, if they be similarly situated. * * Any person who is a sailor may enjoy the immunity, and any citizen desiring such immunity may have it, in the words of the constitution, 'upon the same terms,' by becoming a sailor." So in the case at bar the privilege, if such it be deemed, of selling tickets under this act, is granted to railroads only to be done by them directly or through their agents, and all railroads are treated alike and entitled to enjoy the privileges or immunities granted, and any one desiring to secure like privileges and immunities can do so by becoming one of that class. The difficulty with the argument on the part of the defendant is that it fails to make a distinction between the persons who, as

agents of the railroads, act for them, and such persons acting in their individual capacity as third persons. If the law allowed such agents to act in their individual capacity, and not as agents solely, when possessed of the certificate provided for in the law, it would doubtless be amenable to the objection raised by the defendant; but such is not the case.

5. Furthermore, defendant has no unqualified right to sell and deal in the tickets of a railroad, and is therefore not deprived of a privilege or immunity guaranteed by the constitution, as the right claimed is not one of the fundamental rights guaranteed by this clause of the constitution. It is argued, however, that the defendant cannot bring himself within this class ; it being contended that the legislature has delegated to the railroad companies the power to classify the citizens of the State and authorize some of them to conduct a business and prohibit all others from engaging in the same business. Here, again, the representative capacity of the agent of the railroad is confounded with his individual capacity. It is the railroads themselves that are classified, and not the individuals who may act as agents for them. Prior to the passage of this act the railroads had a right to sell tickets and appoint agents ; that was one of their privileges, and they were not required to furnish them with certificates showing such agency ; and the act does not take away either privilege, but adds the requirement of furnishing such agents with a certificate. All railroads dealing in tickets within the State, like ."all seamen of sea-going vessels," are treated alike.

6. It is next claimed that the act interferes with the inter-state commerce clause of the federal constitution, in that it relates to tickets of railroads without as well as within the State. We cannot see the force of this contention. Under the law the railroads can sell as freely as they

could before. The one additional requirement is that they furnish their agents with a certificate of authority. It does not attempt to regulate commerce within the meaning of that term as interpreted by the Supreme Court of the United States. It casts no burdens upon commerce, and places no obstacles in its way. Its operation is wholly within the limits of the State and within the police power of the State. As stated in *Nashville, C. & St. L. Ry. Co.* v. *Alabama*, 128 U. S. 96 (9 Sup. Ct. 28, 32 L. Ed. 352), "such legislation is not directed against commerce, and only affects it incidentally, and therefore cannot be called, within the meaning of the constitution, a regulation of commerce."

7. Finally, it is urged that the legislature has no right to prohibit a lawful and harmless calling, and it is urged that the ticket brokerage business has always been a lawful and proper vocation, and may be honestly conducted. The legislature, however, has seen fit to prohibit the conduct of such business in order to protect travelers from fraud, and the facts alleged in this complaint, if true, apparently uphold the legislature in the wisdom of its act. With this, however, this court has nothing to do. It is within the power of the legislature to prohibit the doings of acts that in themselves have been and are legal, as, for instance, the catching of salmon during certain seasons of the year may be prohibited, the killing of wild game may be prohibited, and numerous other instances which are found upon our statute books. Consequently this contention is not tenable: *City of Portland* v. *Meyer*, 32 Or. 368–371 (52 Pac. 21, 67 Am. St. Rep. 538); *State* v. *Schuman*, 36 Or. 16–25 (58 Pac. 661, 47 L. R. A. 153 78 Am. St. Rep. 754).

We deem it unnecessary to discuss further the questions argued upon this appeal, for the reason that legislation similar to the act in question has been adopted in

many of our sister states, and its constitutionality has been fully sustained by all of their highest courts, with the single exception of the State of New York, where two dissenting opinions were rendered that agree with the following decisions, which fully discuss all questions raised in the case at bar, and all of which hold it to be within the police power of a State, through its legislature, to enact such a law as the one in question : *Fry* v. *State*, 63 Ind. 552 (30 Am. Rep. 238); *Burdick* v. *People*, 149 Ill. 600 (36 N. E. 948, 24 L. R. A. 152, 41 Am. St. Rep. 329); *State* v. *Corbett*, 57 Minn. 345 (59 N. W. 317, 24 L. R. A. 498); *Commonwealth* v. *Keary*, 198 Pa. St. 500 (48 Atl. 472); *Jannin* v. *State*, 42 Tex. Cr. R. 631 (51 S. W. 1126, 96 Am. St. Rep. 821); *State* v. *Bernheim*, 19 Mont. 512 (49 Pac. 441); *In re O'Neill*, 41 Wash. 174 (83 Pac. 104, 3 L. R. A., N. S., 415); *State* v. *Manford* (Minn.), 106 N. W. 907. The only courts holding adversely to the above decisions are the courts of New York, which follow the opinion of Chief Justice PARKER, of the New York Court of Appeals, in the case of *People ex rel* v. *Warden of Prison*, 157 N. Y. 116 (51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763); in which case the decision is largely based upon two grounds: First, that the New York statute conferred authority upon an agent of one railroad to sell the tickets of any other railroad, which the statute in this State does not do, it expressly limiting its authority to the sale of the tickets of the road appointing him ; and, second, on the ground that the act was a violation of the liberty of the citizens guaranteed him by the constitution to engage in ticket brokerage, which the State could not take away by the exercise of its police power. We are, however, unable to agree with the logic or the reasoning of that opinion, but prefer to accept the reasoning and logic of the two dissenting opinions written in the same case, which have been practically adopted by the cases above mentioned.

We therefore hold the act valid, and the judgment of the lower court is affirmed.                    AFFIRMED.